**EXHIBIT 1**

# QUEST DIAGNOSTICS INCORPORATED
# RESTATED SEVERANCE PAY PLAN

## ARTICLE I
## PURPOSE

The purpose of the Quest Diagnostics Incorporated Severance Pay Plan is to provide guidelines for payments to certain Covered Persons, as such term is defined in Section 2.3, who meet the eligibility requirements set forth in the Plan when they involuntarily terminate employment from an Employer, as such term is defined in Section 2.4 of this Plan, for reasons other than cause and except as provided for in Section 3.2. This Plan relates to persons designated by management of Quest Diagnostics Incorporated ("Quest Diagnostics"), in its sole discretion, who are terminated by Employer without cause. No other persons are eligible for coverage under this Plan. If provision is not specifically made within this Plan for severance pay to be awarded in a particular fact situation, then severance pay is not to be awarded pursuant to this Plan in that situation. The Plan Administrator has no authority to award a severance pay benefit unless the situation specifically is covered by this Plan.

There is no requirement that the Employer pay any severance pay at all except as provided herein. Quest Diagnostics and the Employer expressly retain all managerial rights and prerogatives permitted by law, including but not limited to all rights regarding Plan design and Plan amendment.

No other severance benefits shall be paid to Covered Persons, regardless of any past or current oral or written severance policy of Quest Diagnostics, Employer, or their predecessors. This Plan is to be interpreted and construed as an amendment to all current severance policies of each Employer. This Plan also supersedes any notice requirement previously adopted by Quest Diagnostics or the Employer.

## ARTICLE 2
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the meanings set forth below:

**2.1   Appeals Board.** The Benefits Review Board of the Quest Diagnostics, as membership is modified from time to time.

**2.2   Benefits Committee.** The Quest Diagnostics Employee Benefits Administration Committee, as membership is modified from time to time.

**2.3   Covered Person.** Any regular employee of a Quest Diagnostics related entity who meets all of the following requirements:

(a) The person's wages, hours of work and conditions of employment are not subject to a collective bargaining with a labor organization which represents the person for purposes of collective bargaining;

(b) The person was, at the time of the termination of employment, employed by an Employer, as such term is defined in Section 2.4;

(c) The person is not covered under a written employment contract which provides a guaranteed term of employment, a guaranteed period of notice for termination or a guaranteed severance package on the date of termination of employment;

(d) The person was a bona fide employee of an Employer rather than an independent contractor;

(e) The person was not a temporary or on call employee of an Employer; and

(f) The Employer's management determines, in its sole discretion, that the person was terminated without cause.

**2.4 Employer.** An entity which is owned one hundred percent, directly or indirectly, by Quest Diagnostics and incorporated or formed in the United States. This Plan does not apply to persons employed in a division, subdivision, plant, location or other identifiable group that is acquired by Quest Diagnostics after this Plan was promulgated unless the Benefits Committee has extended the Plan to such persons by notifying the Plan Administrator in writing;

**2.5 Exempt.** A Covered Person whose job classification is salaried, rather than paid on an hourly basis. Determinations as to whether any particular position is classified as an Exempt and the criteria for those determinations shall be in the sole discretion of the Vice President of Human Resources or his or her designee. The definition of Exempt may be modified or amended by the Vice President of Human Resources at any time in accordance with the terms of this Plan.

**2.6 Non Exempt.** A Covered Person who is paid on an hourly basis, rather than salaried. Determinations as to whether any particular position is classified as a Non Exempt and the criteria for determining whether any particular position is Non Exempt shall be in the sole discretion of the Vice President of Human Resources or his or her designee. The definition of Non-Exempt may be modified or amended by the Vice President of Human Resources at any time in accordance with the terms of this Plan.

**2.7 Plan.** The Quest Diagnostics Incorporated Severance Pay Plan, as amended from time to time.

**2.8 Plan Administrator.** The Benefit's Committee, as defined in Section 2.2. Wherever this Plan indicates the Plan Administrator or the Plan Administrator's designee may perform a function, the Director (or Leader) of Corporate Benefits and HR Alliances, or the successor to such position, or his or her designee, shall be deemed the designee.

2.9 **Plan Year.** The calendar year.

2.10 **Service.** Full years of vesting service credited under the Quest Diagnostics Incorporated Employee Stock Ownership Plan.

2.11 **Vice President of Human Resources.** The Vice President of Human Resources of Quest Diagnostics Incorporated.

2.12 **Weekly Pay.** 1/52 of a Covered Person's annual basic salary, as it existed on the Covered Person's termination date, and which includes straight time earnings, commissions and shift differential and excludes overtime, bonuses and special premiums and allowances. Commissions are determined by calculating average weekly commissions paid in the twelve full months before the date of termination, in accordance with the procedures determined by the Plan Administrator or its designee in its sole discretion.

2.13 **SmithKline Long Service Employee.** An employee who was employed by SmithKline Beecham Clinical Laboratories, Inc., immediately prior to the Closing of the Stock and Asset Purchase Agreement among SmithKline Beecham PLC, SmithKline Beecham Corporation and Quest Diagnostics Incorporated dated February 9, 1999, who had a minimum of twenty-four (24) years of service under SmithKline Beecham Laboratories, Inc.'s service rules as of that date.

## ARTICLE 3
## SEVERANCE PAY BENEFIT

3.1 **Eligibility.** A Covered Person whose employment is terminated by an Employer because of a reduction-in-force, job elimination, facility closing, reorganization or consolidation. Determinations of Eligibility shall be in the sole discretion of the Plan Administrator or his or her designee.

3.2 **Facility Closing – Voluntary Reductions in Force.** In the event of the closing of an entire facility by the Employer, the Employer may elect in its sole discretion to offer severance benefits provided for in the Plan to otherwise Covered Persons ("Participants") who voluntarily elect to receive such severance in exchange for their voluntary resignation from employment with the Employer, subject to the following conditions (the "Voluntary Severance Option"):

(a) Participants must make the election to participate in writing within one (1) week of being notified of their eligibility to participate. Participant who do not return the election form within the time specified in the notice will be considered under the Employer's normal guidelines for reductions in force;

(b)     In the event that a Participant does not elect to participate in the Voluntary Severance Option and is not offered a position with the Employer, the Participant will be eligible for severance benefits under the Plan;

(c)     In the event that a Participant does not elect to participate in the Voluntary Severance Option, and is later offered and refuses a position, the Participant would not be eligible for severance under the Plan, except in extreme hardship situations; and

(d)     If there are too many Participants seeking participation in the Voluntary Severance Option, the Participants with the greatest number of years of service will be given the opportunity to participate. Performance will not be a consideration in determining participation in the Voluntary Severance Option

**3.3     Disqualifying Events.** A Covered Person who might be otherwise eligible for a severance pay benefit under this Plan shall be disqualified for such benefit by the following events and circumstances:

(a)     The Covered Person fails to continue in the interim employ of the Employer, satisfactorily performing the Covered Person's assigned duties, until the date actually set for the Covered Person's termination by the Employer;

(b)     The Covered Person works for a division, subdivision, plant, location or other identifiable entity that is sold or otherwise transferred to an owner other than the Employer, whether or not the Covered Person is offered employment by the new owner;

(c)     The Covered Person refuses to abide by any covenant not to compete or solicit executed by the Covered Person in favor of or with Quest Diagnostics, Employer, or their subsidiaries or affiliates;

(d)     The Covered Person is terminated for reasonable cause, including but not limited to insubordination, dishonesty, theft, willful misconduct, harassment, poor performance, lateness, absenteeism, or being under the influence of illicit drugs or alcohol at work or on Employer's premises;

(e)     The Covered Person is terminated by retirement, resignation or death;

(f)     The Covered Person refuses to accept a transfer to an assigned job or location, except the individual may notify the Plan Administrator, pursuant to the provisions of Section 4.1(b), of the individual's belief that such transfer presents the individual with extreme hardship, and the Plan Administrator may, in his or her sole discretion, provide benefits under the Plan if the Plan Administrator determines, in accordance with the procedures determined by the Plan Administrator, in his or her sole discretion, that the transfer would constitute a hardship for the individual;

(g) The Covered Person has been notified that he or she will receive severance benefits which equal or exceed the benefits under the Plan;

(h) The Covered Person takes a leave of absence under any Company policy, and fails to return to his or her position within the time period within which the Company has an obligation to restore the Covered Person to a similar position. An example of this Disqualifying Event is the Covered Person qualifies for and receives leave under the Federal Family and Medical Leave Act and/or a similar state law, and the individual is unable to return to work during the period of time that the law requires the Company to restore the individual to a similar position. If no position is available after the leave entitlement period has expired, the individual is not entitled to severance;

(i) The Covered Person is employed by an entity other than an Employer, as such term is defined in this Plan;

(j) The Covered Person is employed by an affiliate or subsidiary of an entity which is not one hundred percent owned, directly or indirectly, by Quest Diagnostics or is not formed or incorporated in the United States;

(k) The Covered Person is employed by an affiliate or subsidiary of Quest Diagnostics to which Quest Diagnostics has not extended the Plan;

(l) The Covered Person is offered and accepts a position with an entity owned or controlled, directly or indirectly, by Quest Diagnostics or otherwise affiliated with Quest Diagnostics;

(m) The Individual provided services for the Employer at a client's location, and as a result of a reduction or termination of the business relationship between the Employer and the client, the Individual commences employment with the client immediately following or within a reasonable period of time following the termination of or reduction in Employer's operations at the client's location, whether or not those responsibilities were similar to those performed on behalf of the Employer; or

(n) The Plan Administrator, or its designee(s), in its discretion, determines that under the facts and circumstances relating to the Covered Person's termination, or because of the Covered Person's conduct subsequent to termination, it would be inappropriate to commence severance payments.

**3.4  Guidelines for the Severance Benefit.** The benefit provided herein shall be the maximum benefit an Employer will pay for severance. The creation of this Plan, and the payment of benefits under it, are voluntary and unconditional and are intended to comply with the provisions of 29 U.S.C. Section 2104(a)(2)(B).

(a) Under this Plan, the guidelines for calculating the severance benefits for both Exempt and Non Exempt Covered Persons are to calculate compensation, if any, due and owing by operation of the Worker Adjustment and Retraining Notification Act ("WARN") or other federal law; plus (i) any additional compensation due and owing by operation of any lawful state statute, other than workers compensation or unemployment benefits; plus (ii) an additional payment, if necessary, so that the total sum received by an eligible Exempt or Non Exempt shall equal, <u>at minimum</u>, eight times the Weekly Pay, plus two times Service times the Weekly Pay [i.e. (8) x (Weekly Pay) + (2 x Service) x (Weekly Pay)] and, <u>at maximum</u>, not exceed fifty-two (52) weeks of severance.

(b) Until December 31, 2000, for a SmithKline Long Service Employee, under this Plan, the severance benefits shall be calculated as set forth above, except that severance benefits shall be increased for such employees by the amounts set forth below:

| | |
|---|---|
| 24 years of service | 1 additional week of severance |
| 25 years of service | 4 additional weeks of severance |
| 26 years of service | 6 additional weeks of severance |
| 27 years of service | 8 additional weeks of severance |
| 28 years of service | 10 additional weeks of severance |
| 29 years of service | 12 additional weeks of severance |
| 30 or more years of service | 15 additional weeks of severance |

The maximum severance benefit payable to a SmithKline Long Service Employee shall be 67 weeks of severance under this Plan. After December 31, 2000, there shall be no increase in benefits for a SmithKline Long Service Employee under this Section 3.4(b), and this provision shall be automatically deleted.

**3.5    Time and Form of Payment.** (a)    The severance benefit payable under this Plan shall be paid over time on Employer's normal pay days unless the Covered Person, in accordance with a procedure adopted by the Plan Administrator, elects in writing to receive the severance benefit in a lump sum prior to the last date of employment. In the event of such a written election by the Covered Person, the medical and dental benefits shall be limited to those set forth in Section 3.6(c)(ii), as amended.

(b) The failure of the Covered Person to make the election for a lump sum payment as described in Section 3.5, which is construed as an election to receive the benefits payable under this Plan over time on Employer's normal pay days, may not be rescinded except if the Covered Person advises the Plan Administrator or its designee in writing by certified or regular mail that he/she has obtained other employment, in which event a lump sum payment shall be made within one month of the Plan Administrator's receipt of such notice.

The Covered Person shall not be entitled to medical and dental benefits beyond that set forth in Section 3.6 after a lump sum payment is made pursuant to this Section 3.5(b), unless otherwise required by federal, state or local law.

**3.6   Other Benefits.** The medical and dental benefits provided under these guidelines shall be the maximum that the Employer will provide to full-time Covered Persons. Covered Persons who are not eligible for medical and dental benefits, or who have not elected medical and dental benefits applicable to the year of their termination, shall not be eligible for medical and dental benefits under this Plan. The creation of this Plan, and the payment of benefits under it, are voluntary and unconditional and are intended to comply with the provisions of WARN, 29 U.S.C. §2104(a)(2)(B).

Under the Plan, the guidelines for determining the amount of medical and dental benefits are as follows:

(a)   The Employer will provide any medical and dental benefits required by WARN or other federal law; plus

(b)   Any additional medical and dental benefits required by any lawful state statute, other than workers compensation; plus

(c)   (i)   For Covered Persons who have not elected a lump sum payment pursuant to Section 3.5(b), additional medical and dental benefits, if necessary; so that the Covered Person receives medical and dental benefits, with Covered Person contribution to the costs of the insurance, for a time period equal to the number of weeks that the Covered Person is receiving severance benefits under this Plan; or

(ii)   For Covered Persons who have elected a lump sum payment pursuant to Section 3.5(b), no additional medical and dental benefits are provided; plus

(iii)   Additional medical and dental benefits, if necessary; so that the Covered Person receives medical and dental benefits, with Covered Person contribution to the costs of the insurance, for a minimum of three (3) months from the Covered Person's last date of employment.

(d)   Except as otherwise provided in this Plan or required by applicable law, the medical and dental benefits will be provided upon the same terms and conditions as medical and dental benefits are provided to retained individuals.

**3.7   (a)   Reemployment by Quest Diagnostics.** Any severance payments or other benefits under this Plan shall terminate on the date of reemployment.

(b)   In the event the Covered Person elected to receive a lump sum distribution, in accordance with the terms of this Plan, including but not limited to Sections 3.5(a) and 4.1 (b), as amended, and the Covered Person becomes reemployed by the

Employer before the date that the severance benefit would have terminated had the payments been made over time on Employer's normal pay days, the Covered Person shall, as a condition to reemployment, repay that portion of the severance benefits which would not have been paid pursuant to Section 3.7(a), as amended, in accordance with procedures adopted by the Company.

**3.8   Withholding.** The Employer shall have the right to take such action as it deems necessary or appropriate to satisfy any requirement under federal, state or other law to withhold or to make deductions from any benefit payable under this Plan. The Employer shall not permit deduction of 401K contributions or stock purchase plan contributions from any benefit.

## ARTICLE 4
## ADMINISTRATION

**4.1   The Plan Administrator.**

(a)   The Plan Administrator shall administer the Plan, and furnish all notices and do all filings, according to law, and shall have the power to implement, operate and interpret this Plan in his or her discretion and, further, to take such other action as the Plan Administrator deems appropriate under the circumstance in light of the purpose of this Plan. In all cases, the rights and benefits of Covered Persons under this Plan are to be governed solely by the terms and conditions of this Plan. Interpretation and application of the Plan, including the construction of all of this Plan's provisions and the determination of eligibility for benefits, will be made by the Plan Administrator, and are within the Plan Administrator's sole and absolute discretion.

(b)   The Plan Administrator shall have the authority, in his or her sole discretion, to adopt a procedure to address hardship situations. The Plan Administrator shall have no obligation to do so, but in the event hardship provisions are adopted, the definition of hardship and the procedures adopted relating to hardship shall be in the sole discretion of the Plan Administrator. In order for an individual's request for severance as a result of a hardship to be considered, the individual must provide the Plan Administrator with a writing which explains all of the facts which the individual believes the Plan Administrator should consider in making a determination as to whether the transfer constitutes a hardship.

**4.2   Notification to Covered Persons.** The Plan Administrator or his or her designee shall notify Covered Persons when and if such Covered Persons become eligible for a benefit under the provision of this Plan.

**4.3   Claims by Employees.** Any Employee covered by this Plan who believes that an event has occurred which entitles such Employee to a benefit under this Plan but who has not been advised of such benefit or who believes that the calculation of the benefit is in error shall file a claim by certified or registered mail to his or her local Human Resources Manager. The claim

should be filed within ten (10) days of the date on which the Employee had been advised of the Employee's scheduled termination or within ten (10) days of the date that the Employee has learned the amount of the benefit under this Plan, or that there will be no benefit.

The claim shall be in writing, signed by the Employee, dated, and set forth the facts which such Employee believes to be sufficient to entitle him to the benefit claimed.

The claim shall be mailed to the local Human Resources Manager by certified mail or presented in person. If it is presented in person to the Human Resources Manager, then the Human Resources Manager must, upon the Employee's request, give the Employee an acknowledgment of receipt in writing.

Within ninety(90) days of receipt of the claim the Human Resources Manager shall respond in writing to the Employee. If any claim for benefits is denied, the notice shall be written in a manner calculated to be understood by the individual and shall include:

(a)   The specific reason or reason for the denial; and

(b)   Specific references to the pertinent Plan provisions on which the denial is based.

If special circumstances require an extension and the reason therefor shall be furnished to the claimant by the Human Resources Manager before the end of the initial ninety (90) day period. In no event shall such extension exceed one hundred and eighty (180) days after the receipt of the initial claim for benefits.

In the event a claim for benefits is denied or if the individual has had no response to such claim within ninety (90) days of its submission (in which case the claim for benefits shall be deemed to have been denied), the individual or his duly authorized representative, at the individual's sole expense, may appeal the denial by filing a written request for review with the Appeals Board within sixty (60 )days of the receipt of written notice of denial or sixty (60) days from the date such claim is deemed to be denied.

4.4   **Appeals.** Any individual not satisfied by the disposition of the claim by the Human Resources Manager shall have the right to appeal to the Appeals Board.

The appeal must be filed within sixty (60) days after the individual receives written notification of the claim denial. The appeal shall be in writing and shall include a copy of the claim made to the Human Resources manager and the decision by the Human Resources Manager. It shall briefly explain why the individual believes the decision by the Human Resources Manager was in error.

The appeal shall be filed with the Director (Leader) of Total Compensation or any member of the Appeals Board, by certified mail or in person. If it is filed in person, the member of the Appeals Board must, upon request, give the individual an acknowledgment of receipt in writing.

Appeals must be decided by the Appeals Board, and a written answer to the appeal sent to the individual, within sixty (60) days of the date on which the notice of appeal was filed, unless special circumstances require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but no later than 120 days after receipt of a request for review. If such an extension of time is required, written notice of the extension shall be furnished to the individual before the end of the original sixty (60) day period. The decision on the review shall be in writing, shall be written in a manner calculated to be understood by the individual, and shall include specific references to the provisions of the Plan on which such denial is based. If the decision on review is not furnished within the time specified above, the claim shall be deemed denied on review, and the basis of the denial shall be deemed to be the same reasons as were provided to the individual by the Human Resources Manager. The decision of the Appeals Board upon review will be final and binding on all parties.

In ruling upon any appeals, interpretation and application of the Plan, including the construction of all of this Plan's provisions and the determination of eligibility for benefits, will be made by the Appeals Board, and are within the Appeals Board's sole and absolute discretion.

## ARTICLE 5
## AMENDMENT AND TERMINATION

**5.1 Effective Date and Termination Date.** The provisions of the Plan, as contained in this instrument, shall become effective on April 1, 1997 and shall terminate on May 5, 2001 unless extended, shortened or otherwise modified in writing by the Benefits Committee.

**5.2 Reservation of Rights.** Quest Diagnostics reserves the right, in its sole and absolute discretion, whether in an individual case or more generally to, alter, reduce, amend, eliminate, or terminate the Plan and any aspect of it. The benefits provided for in this Plan are not vested benefits. Quest Diagnostics will attempt to inform Covered Persons as promptly as possible of any changes in benefits under this Plan; however, this is not always practical or possible and, where this is the case, Quest Diagnostics reserves its rights, in its sole and absolute discretion, to make changes in benefits without prior notice.

The following procedure shall govern the alteration, or amendment of the benefits and/or Plan described herein. The Benefits Committee may alter or amend these benefits and/or the Plan by way of written memorandum.

There is no requirement that an Employer pay any severance pay at all except as provided herein. Quest Diagnostics and the Employers expressly retain all managerial rights and prerogatives permitted by law, including but not limited to all rights regarding Plan design and Plan amendment.

This Plan, for the facilities and time frames described above and for individuals determined to be eligible under this Plan, will supersede all other severance or separation plans which may be applicable.

## ARTICLE 6
## MISCELLANEOUS

**6.1 Right to Terminate Employment.** The fact that an individual formerly employed by an Employer has failed to qualify for a benefit under this Plan shall not rescind or otherwise affect in any manner whatsoever the individual's termination of employment from the Employer, and such failure to qualify for a benefit shall not establish any right of any kind or description whatsoever (a) to a continuation or to a reinstatement of employment with the Employer or (b) to receive any payment from the Employer in lieu of such benefit.

**6.2 Source of Benefits.** All benefits paid to a terminated Covered Person under this Plan shall be paid from the general assets of the Employer, and the status of the claim of a person to any benefit shall be the same as the status of a claim against the Employer by any general and unsecured creditor. No person shall look to, or have any claim against, any officer, director, employee or agent of Quest Diagnostics or the Employer in his individual capacity for the payment of any benefits under this Plan.

**6.3 Benefits not to be Construed to be Pension Benefits.** If the benefits provided for by this benefit plan, together with other termination benefits (other than benefits provided for in a qualified benefit plan) equal or exceed the equivalent of two years' pay to a Covered Person, the Plan Administrator has the authority to reduce payments payable under this Plan. Benefits paid under this Plan shall not be paid if payment of such benefits may or would convert such benefits to pension benefits.

**6.4 No Assignment; Binding Effect.** No Covered Person shall have the right to alienate, assign or otherwise encumber his or her benefit under this Plan for any purpose whatsoever, and any attempt to do so shall be disregarded completely as null and void. The provisions of this Plan shall be binding on each Covered Person (and on each person who claims a benefit under any such person) and on the Employer.

**6.5 ERISA.** Quest Diagnostics intends that this Plan constitute a "welfare plan" under the Employee Retirement Income Security Act of 1974, as amended, and any ambiguities in this Plan shall be construed to effect that intent.

**6.6 Construction.** This Plan shall be construed in accordance with the law of the State of Delaware to the extent not preempted by Federal law. Headings and subheadings have been added only for convenience of reference and shall have no substantive effect whatsoever. All references to sections shall be to sections of this Plan.

**6.7 Usage.** Whenever applicable the masculine gender, when using this Plan, shall include the feminine or neutral gender, and the singular shall include the plural.