**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **ANTHONY PASSAUER**<br>**Plaintiff,**<br>v.<br>**QUEST DIAGNOSTICS INCORPORATED,**<br>**Defendant.** | Civil No.: CCB 03-CV-159 |

### DECLARATION OF SAYED (ALI) HAGHGOO

I, Sayed (Ali) Haghgoo declare as follows:

1. I currently am employed by Remax as a real estate agent. Prior to October 2001, I was a Purchasing Supervisor for the Baltimore, Maryland business unit of Quest Diagnostics Inc. ("Quest"). Although my first name is Sayed, I am generally known as "Ali." The facts in this Declaration are based on personal knowledge.

2. Prior to Quest's acquisition of SmithKline Beecham Clinical Laboratories ("SmithKline") in August 1999, I was the Facilities Supervisor for SmithKline's Owings Mill warehouse. After the acquisition, I continued to work in the same capacity at the same location until the Owings Mill warehouse closed during the first quarter of 2000. I reported to Larry Bauernshub, Warehouse Manager, who was based at Quest's pre-existing warehouse on Caton Avenue in Arbutus, Maryland. However, by April 1, 2000, all of the work formerly done at the Owings Mills facility had been transferred to the Caton Avenue facility, along with essentially all the employees, including myself. I recall that some individuals declined the transfer due to the commute. Thereafter, I continued to report to Mr. Bauernshub. There was also a work leader at Caton Avenue.

3.     While I was at the Owings Mills facility, I supervised the work of Warehouse Coordinator Anthony Passauer. Among other things, Mr. Passauer ordered supplies by entering orders into a computer, and also printed out orders from various clients. After completing his ordering tasks, he would then go to the warehouse itself and help others get the items, box them, tape up the box, and place the box on the loading dock. In the latter part of the day he worked on restocking, especially as new stock came in to the warehouse. When new stock arrived, he checked the order; moved the goods from the dock where the driver left them; and shelved the items. He also performed a significant amount of facilities maintenance, not only in the warehouse, but also at the company's various other facilities. Although he used a forklift truck as needed and a hand truck, there was constant lifting. I regularly saw him lifting boxes. Every day there were many heavy boxes of paper to move.

4.     I was aware that Mr. Passauer went out for serious surgery on his shoulder in early 2000. He was out during the time that the Owings Mills warehouse closed and the work was consolidated at the Caton Avenue facility. During this period, I talked with Mr. Bauernshub about Mr. Passauer and the work that he had performed.

5.     I have learned that Mr. Passauer returned attempted to return to work after obtaining a doctor's certificate that limited him to light duty, not lifting more than thirty pounds, and that Quest declined to allow him to return with such a restriction. I was not involved in this decision. However, based on my experience as Purchasing Supervisor at the Caton Avenue facility, the work of the employees at the Caton Avenue warehouse regularly involved lifting more than thirty pounds.

6.    I left Quest in October 2001.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of September , 2003 at Westminster, Maryland.

                                                                /*
_____
                                      Sayed (Ali) Haghgoo

*Due to the illness of Mr. Haghgoo's wife, Counsel was unable to obtain a signed copy of the foregoing document by the filing deadline of September 23, 2003. Counsel certifies that Mr. Haghgoo had read a prior draft and had verbally approved the foregoing revised version. Counsel further certifies that it will substitute a signed copy as soon as it is available.