**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| **ANTHONY PASSAUER**<br>**Plaintiff,**<br>v.<br>**QUEST DIAGNOSTICS INCORPORATED,**<br>**Defendant.** | **Civil No.: CCB 03-CV-159** |

### DECLARATION OF BRIAN STEINBACH

I, Brian Steinbach, declare as follows:

1. I am an attorney with Epstein Becker & Green, P.C., counsel for Defendant Quest Diagnostics Incorporated ("Quest"), the Defendant is this proceeding. The facts in this Declaration are based on personal knowledge.

2. On January 24, 2003,[1] I called J. Scott Morse, counsel for Plaintiff, to ask his consent to a two-week extension of time to file an Answer, from January 27 until February 10. During the course of the conversation, I referenced that the case had been removed to federal court, and learned that Mr. Morse had not received a copy of the Notice of Removal or other removal papers filed on January 17 and served on him by mail that day. I told him that the papers had been sent to him by mail. Mr. Morse agreed to the requested extension.

3. On February 5, the post office returned to me the copy of the removal papers sent to Mr. Morse, at which time it was discovered that there had been a one digit error in Mr. Morse's address. I immediately sent a set of the removal papers to Mr. Morse's correct

---

[1] Unless otherwise noted, all dates are in 2003.

address, along with a copy of the Agreed Motion to extend the time for filing an Answer file don January 25. A copy of my transmittal memo to him is attached as Exhibit 1.

4. Beginning with our telephone conversation on January 24, Mr. Morse and I engaged in settlement discussions, which continued through June 19. My records show that we had such discussions, either by telephone or through email, on January 24, February 27, April 14, May 20, June 9, June 13, and June 19. During these discussions, <u>both</u> of us shared some factual information about our respective cases. Mr. Morse also produced a tape recording of a telephone message left on Plaintiff's answering machine by one of Quest's Human Resources employees.[2]

5. In light of the settlement discussions, I delayed serving Quest's written discovery on Plaintiff until May 23, the last possible day that would allow a response by the June 25 date for ending discovery (if served by mail). The May 23 deadline passed, however, without Plaintiff serving any written discovery, or any request from Mr. Morse for an extension of time to do so.

6. By letter dated and faxed June 9, I reminded Mr. Morse that discovery ended on June 25, and proposed several dates for the Plaintiff's deposition from June 19 through June 25. A copy of this letter is attached as Exhibit 2. The same day, Mr. Morse called me, acknowledged receipt of the letter, and renewed settlement discussions. On June 13, Mr. Morse called me again and informed me that Plaintiff was in the hospital and would be so for another week, and therefore could not be available for his deposition on the proposed dates.

---

[2] An agreed transcript of this tape recording, as later introduced at Plaintiff's deposition as Dep. Ex. 9, has been submitted to this Court in support of Quest's Motion for Summary Judgment.

2

We also further discussed settlement and briefly touched on the possible need to extend discovery for the purposes of taking Plaintiff's deposition if there was no settlement.

7. By email on June 19, I informed Mr. Morse that his last settlement offer was rejected and that Quest would not be increasing its prior offer. A copy of this email, with the proposed settlement amounts redacted, is attached as Exhibit 3. The email went on to state:

> In light of Mr. Passauer's hospitalization, we need to extend discovery (which closes June 25) for the purposes of taking his deposition. As I recall, he was hospitalized last week, was expected to remain in the hospital through this week, and likely will need at least a few days to recuperate. I would be happy to prepare a consent motion doing so for thirty days, as well as extending the other remaining deadlines for thirty days. This should allow some time for recovery before deposing him. Please let me know.

See Exhibit 3.

8. By email the next day, June 20, a copy of which is attached as Exhibit 4 (proposed settlement amounts redacted), Mr. Morse agreed to this proposal, except that he suggested 60 days instead of 30. I responded the same day that I would likely have a draft by Monday or Tuesday, and that 60 days probably was fine. A copy of this email is attached as Exhibit 5 (proposed settlement amounts redacted).

9. At 1:55 p.m. on Monday, June 23, I faxed a draft joint motion to Mr. Morse, a copy of which is attached as Exhibit 6. However, Mr. Morse did not respond. After attempting to contact Mr. Morse for his comments on Wednesday morning, June 25, the last day of discovery, that afternoon I left a message for Mr. Morse that I would convert the draft joint motion to an agreed motion and file it that day.

10. The Agreed Motion to Modify Scheduling Order, a copy of which is attached as Exhibit 7, was filed on June 25. In a voice mail message left for me on July 1, Mr. Morse acknowledged seeing the Agreed Motion and that it was acceptable.

11. Also on July 1, this Court granted the Agreed Motion, signing the Order submitted by Quest. A copy of the Order is attached as Exhibit 8.

12. By letter to Mr. Morse dated July 2, a copy of which is attached as Exhibit 9, I noted that the responses to Quest's written discovery requests were overdue. I also noted that I was aware that Plaintiff was in the hospital the week prior to the due date. I asked for a commitment that the responses would be provided in the near future. In a telephone conversation on or about July 7, Mr. Morse and I agreed to a delay until no later than July 25. I confirmed this agreement in a July 11 email, a copy of which is attached as Exhibit 10.

13. By email on July 11 Mr. Morse requested that Mr. Steinbach send him another copy of Quest's written discovery, which I did the same day. See Exhibit 11. Plaintiff ultimately did not serve his responses until July 22, four weeks after the date they originally were due. See Exhibit 12. Among other things, Plaintiff's responses incorporated by reference the tape recording previously produced informally.

14. Through a series of emails from July 11 through July 24, Mr. Morse and I also agreed to schedule Plaintiff's deposition for August 7, at Mr. Morse's office. Based on Mr. Morse's representation that, in light of his recent hospitalization Plaintiff could not afford to miss work, I agreed to a 3:30 start so that he could come after work, despite the fact that this would mean that both the Quest representative and myself would have to work into the

evening. See Exhibits 10 and 13. An appropriate Notice of Deposition issued on July 24. See Exhibit 14.

15. On July 23, Plaintiff served the written discovery requests that are the subject of his current motion. On August 6, I learned of an emergency that would occupy me through the next Tuesday (August 12) and would make it necessary to postpone the deposition. I so notified Mr. Morse, at the same time offering three alternative dates. We quickly agreed to reschedule the deposition for August 15, at the same time, and the deposition went forward on that date. See Exhibit 15. At his deposition Plaintiff testified that he did not go back to work until the week of August 11.

16. Also on August 15, Quest served its responses to Plaintiff's written discovery requests, objecting to the requests in their entirety. Copies of these responses are attached as Exhibit 16.

17. On August 18, Mr. Morse left me a voice mail message that noted his receipt of the responses and in effect asked me to reconsider the objections. A transcription of that message is attached as Exhibit 17. At the time Mr. Morse was aware, from both our prior conversations and my voice mail greeting, that I was away on vacation and would not return to the office until August 26.

18. On August 28, I responded to Mr. Morse's August 18 message by sending him a letter in which, among other things, I recounted the history of the discovery deadlines, further explained Quest's position, and expressly declined to reconsider the decision to object and not provide any other responses. See Exhibit 18.

6

19. On August 29, Mr. Morse left me another voice mail stating his position and further stating that if he did not hear back by Tuesday (September 2) that Quest would be responding, he would file a motion that day. A transcription of that message is attached as Exhibit 19. As Quest had decided not to further respond to Plaintiff's written discovery, I did not call back.

I declare under penalty of perjury that the foregoing is true and correct

Executed this 25th day of September, 2003 at Washington, D.C.



/s/*
Brian Steinbach

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.