```
       IN THE DISTRICT COURT FOR THE DISTRICT OF MARYLAND
                         NORTHERN DIVISION

Anthony Passauer                    *

     Plaintiff                      *

V                                   *    Civil Case No.: CCCB 03-CV-159

Quest Diagnostics Incorporated      *

     Defendant                      *

*    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Plaintiff, by undersigned counsel, respectfully submits this Memorandum of Law in
support of his Response to the Motion for Summary Judgment filed by Defendant.

INTRODUCTION

In a nutshell, this case is about an employer who was downsizing and found a convenient
way to eliminate a long-time, higher paid employee, so that they did not have to continue to pay
his higher salary, and avoided have to pay him the severance pay to which he was entitled of he
had been "let go."  In a convenient coincidence, just after Plaintiff's termination as a "warehouse
coordinator," where he basically served as the supervisor of th inventorying and shipping/receiving of one of Defendant's warehouses, Defendant was looking to hire a
"supervisor of logistics" -  a job that was basically Plaintiff's job with a new title.
      The main issue in this case is whether lifting over 30 pounds was an essential function of
Plaintiff's job.  This is a factual issue that is in dispute.  If it was an essential function of his job,
a secondary issue is whether Defendant has a duty to make an accommodation for Plaintiff, and
whether Defendant intentionally  failed to do so.
                BACKGROUND, AND FACTS
       Plaintiff was an employee of the Defendant as a "warehouse coordinator'" having been
hired in December, 1974.   Due to a shoulder injury which required shoulder surgery and
recovery time, Plaintiff requested from Defendant, and received  a leave of absence from his job.
It was Plaintiff's understanding, due to the representations made in an undisputed letter to him,
that Defendant would have his job if he "returned to work" within twelve weeks.  If he had a
work restriction, he believed Defendant would "work in an effort to accommodate him," and

"look at other options" if the restriction could not be accommodated. Defendant concedes that
these representations were made. See Defendant's Motion, p. 7-8. Furthermore, Plaintiff was
told by Defendant that upon return from leave, "employees are generally reinstated to the same or
equivalent job with the same pay, benefits, and terms and conditions of employment," and that,
"in all circumstances, he would be treated in a fair and consistent manner," based again upon
undisputed language in the FMLA letter dated January 17, 2000, which is attached tp this Motion
as Exhibit A, Deposition Exhibit 6.
    On or about April 5, 2000, Plaintiff advised Defendant verbally that he was ready,
willing, and able to return to work on April 10, 2000, prior to the full 12 weeks granted to him
under the FMLA. Also at that time, Plaintiff presented Defendant with a fitness-for-duty
certificate from Plaintiff's doctor, which stated that Plaintiff could return to work as of April 10,
2000, and that he was not to lift over 30 pounds until May 1, 2000. After meeting with
Defendant's Human Resources Department personnel in person, Plaintiff believed that he was
now back to work as an employee, and had complied with FMLA; however, later that day,
Plaintiff received an undisputed message on his answering machine from Defendant stating they
believed he would only be able to do light duty, and that "until you can come back at full duty
and be able to work with no restrictions, we cannot have you return to work." The transcript of
that messsage is attached as Exhibit A, Deposition Exhibit 9. At that time, there was no
indication that Plaintiff's employment was terminated. Rather, he believed that they has
accepted him back to work, but that Defendant preferred he remain out on disability until his
restriction was lifted, and that he should report for duty at that time. It was not until a letter dated
May 19, 2000, several weeks later, after the FMLA deadline had passed, that he was informed he
was terminated. See Defendant's Motion, p. 11. This fact is also undisputed. Plaintiff now had
no time left to address the issues of his job restriction with his doctor or have further discussions
about these issues with the Defendant or seek to have his restriction lifted, as the FMLA deadline
had expired.
    Plaintiff still believed that, even though his technical job restoration rights under FMLA
had expired, Defendant still wanted him as an employee, based upon the telephone message and
the repeated written assertions that they would work with him. He subsequently returned to work

in the first week of May 2000, but was advised by Defendant that neither his old job nor any
equivalent job was available for him, despite the fact that Defendant was currently looking to hire
a "supervisor of logistics."

ARGUMENT

I. THERE IS A DISPUTE OF FACT AS TO WHETHER DEFENDANT VIOLATED FMLA

The undisputed pertinent language of FMLA reads:
> If the employee is unable to perform the essential function
> of the position because of a physical or mental condition, including
> the continuation of a serious health condition, the employee has no
> right to restoration to another position under the FMLA

29 C.F.R. ?825.214(b).  The factual dispute which remains for a trier of fact to decide is whether
lifting over 30 pounds was an essential function of Plaintiffs job.  As stated in Plaintiff's
affidavit, attached as Exhibit B, Plaintiff rarely, if ever, had to lift over 30 pounds.  His
approximation is less than 1% of the time did he have to lift over 30 pounds.  His main job
functions were to track shipping/inventory on the computer and count boxes/supplies.  Plaintiff
was a certified forklift operator, and the forklift was used to do any major lifting, aside from the
occasional moving of office furniture and the like, which he did as a good employee to help out
his employer on rare occassions, even though it was not his regular job function.  Additionally,
he had two employees working under him who could do any of the rare lifting over 30 pounds
during the few weeks that he was on restriction - a simple accommodation that Defendant could
have acknowledged.

Defendant relies on some very sketchy information to argue that lifting over 30 pounds
was an essential function of Plaintiff's job.  The Human Resources Personnel have no actual
knowledge of Plaintiff's job functions (there is no written job description), other than the
statements of former employees and supervisors of Plaintiff - Larry Bauernshub and Ali Haghoo.
Mr. Bauernshub is recently deceased, and Mr. Haghoo did not sign the submitted affidavit.
Plaintiff's counsel has had conversations with Mr. Haghoo, and proffer's that Mr. Haghoo's
agrees with Plaintiff's  opinion that lifting over 30 pounds was not an essential part of Plaintiff's
job, and that Defense counsel was hassling him on his cell phone while he was at the hopsital
with his wife, which disturbed Mr .Haghoo very much.  He did not sign the affidavit because the
statements contained therein are untrue and are an attempt to slant Mr. Haghoo's statements in
the favor of Defendant.  There is a dispute of fact as to whether lifting over 30 pounds was an

essential function of Plaintiff's job, which must be decided by the trier of fact.
   Regarding Defendant's statute of limitations claim, there can be no doubt from the facts
and allegations, viewed in a light most favorable to Plaintiff, that Defendant's violation of FMLA
was "willful violation" of FMLA.  Defendant basically lied in contending that lifting over 30
pounds was an essential function of Plaintiff's job, and that no accommodation could be made.
Thus, the statute of limitations for Plaintiff's claim is three years, not two years, and Plaintiff's
claim is not barred by the statute of limitations.  If the willfulness is not evidenced by the
Complaint, Plaintiff is happy to amend the complaint to specifically use the words "willful
violation."  Also, Plaintiff was never advised of any two year statute of limitations by his prior
counsel, and he did not engage new counsel until more than two years after the incident took
place.  Under these circumstances, an equitable tolling of the two year statute of limitations
would be appropriate, in the interest of justice, should willful violation of FMLA not be found.

II.   ERISA IS NOT A BAR TO PLAINTIFF'S COMMON LAW CLAIMS
   This case is not about whether Plaintiff is entitled to his severance pay, it is about
whether the Defendant violated FMLA.  Failure to pay severance is merely one element of
Plaintiff's possible damages.  If Defendant violated FMLA, Plaintiff is entitled to lost pay for his
lost employment.  Plaintiff claims lost severance as an element of damages in case Defendant
claims that they were downsizing and would have terminated Plaintiff's employment even if he
had properly been returned to work under FMLA.  It is undisputed that if Plaintiff was terminated
by Defendant without cause, i.e just let go because of downsizing, he was entitled to severance
pay under the terms in the undisputed employee handbook.
   The claim of severance pay is a theory of possible damages, it is not a claim that the
severance plan was improperly administered, or that their was a breach of fiduciary duty, which
is the issue in all of the cases cited by Defendant.  In determining whether a claim under state
law is preempted by ERISA, a court must consider whether the claim "relates to" an ERISA
covered plan, such that granting relief based on the state law would provide a remedy not
permitted by ERISA.  For purposes of preemption, a claim relates to a covered employee benefit
plan ' "if it has a connection with or reference to such a plan.' "  Eid v. Duke, 816 A.2d 844, 850,
373 Md. 2, 12 (2003).  This case does not present the appropriate circumstances where ERISA

preempts state common law claims, as Plaintiff's claim does not relate to the severance plan, it
relates to FMLA violations.  Plaintiff is not disputing any ruling about benefits under an ERISA
plan, or the administration of an ERISA plan.  Rather, Plaintiff is simply listing severance pay as
an alternate theory of possible damages, should Defendant contend that Plaintiff was to be let go
anyway.

III.  THERE IS A DISPUTE OF FACT AS TO WHETHER DEFENDANT MADE VARIOUS NEGLIGENT MISREPRESENTATIONS TO PLAINTIFF

   Throughout it's dealings with Plaintiff, Defendant made numerous false representations
upon which Plaintiff reasonably relied.  Based upon the undisputed representations in the FMLA
letter dated January 17, 2000, Plaintiff decided to take a leave of absence and have his surgery
done.  Had Plaintiff known that Defendant would not "work with him an effort to accommodate
him," or "treat him in a fair and consistent manner," he would not have taken the leave at that
time.  Rather, he would have taken vacation time first, then his FMLA leave, so that he would
have sufficient time to return to work without any restrictions, and maximize his time off, just to
be safe.  See Plaintiff's Affidavit, attached.  Plaintiff relied upon these false statements in
deciding to take a leave of absence, and had no inkling that Defendant would violate all of these
statements and find a way to make him in violation of FMLA and terminate him.

   The January 17, 2000 FMLA letter basically states, and Plaintiff believed, that he would
be reinstated to "the same or equivalent job" so long as he "returned to work" after his FMLA
leave, as indicated in the letter, which he did.  Under paragraph 8 of that letter, which states what
happens if Plaintiff tenders his return to work with restrictions, it does not state or indicate
anywhere that if the restrictions cannot be accommodated, Plaintiff will lose his job.   Rather it
states that "the Company will consider other options, including requiring you to take additional
leave or another open position," both of which Plaintiff was willing to do.  In fact, Plaintiff
believed that when he tendered his return to work on April 5, 2000, within the FMLA time
frame, that he had been accepted as "returning to work," and that the phone message left for him
that night was a merely a request for him to say on leave, at the behest of the Defendant, and had
no idea that his job was in jeopardy until her received a termination letter several weeks later on
April 19.

   This failure to timely notify Defendant of a material fact, and Plaintiff's reliance by not
taking any action (and not knowing that he had to take action) left Plaintiff with out any recourse

once he received the April 19 termination letter.  Defendant's failure to represent a material fact
or the whole truth, left Plaintiff without any time to save his job under FMLA.  If he had known
that his return to work was not accepted as appropriate return under FMLA on April 5, he would
have had five days to take action to protect his employment status under FMLA, such as getting
his restriction lifted, contesting the fact that his job required lifting over 30 pounds, contest the
fact that no accommodation could be made, inquire about other jobs/positions such as the
"supervisor of logistics," apply to use vacation or sick leave, etc.  He lost that opportunity and
was unknowingly put "outside the box" for FMLA return, and lost his job.
    In  Lubore v. RPM Associates, Inc., 674 A.2d 547, Md.App., 109 Md.App. 312 (1996),
an employee sued for negligent misrepresentation over a failure to disclose material facts.  The
Court ruled that:
> The bottom line, therefore, is that Leonard does not substantially affect the viability of appellant's claim in this case for negligent misrepresentation for two reasons: (1) because Leonard dealt with "negligent misrepresentation by silence," whereas here we have (or, at least, are approaching) an ordinary negligent misrepresentation claim; and (2) because, in any event, Leonard expressly left undecided the viability of a " negligent misrepresentation by silence" claim.
>
> Having distinguished Leonard, we are of the opinion that appellant's claim for negligent misrepresentation is viable under the circumstances of this case. As we just alluded, appellant's claim essentially, if not in all respects, is to be considered a traditional negligent misrepresentation claim because appellees were not silent, but rather affirmatively represented only part of the truth--a misrepresentation all the same in our opinion.

Id at 561, 341.  Plaintiff's claim is similar to that in Lubore, where a material fact was
misrepresented/omitted, and Plaintiff was damaged by relying upon it.  The Court in Lubore
ruled that summary judgment was inappropriate, and that Plaintiff had a valid cause of action, as
does the Plaintiff in the case at hand.  Therefore, summary judgment in favor of Defendant on the
count of negligent misrepresentation is inappropriate.

IV.   THERE IS A DISPUTE OF FACT AS TO WHETHER THERE WAS PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

    Although it does not contain the word "promise," the FMLA letter dated January 17,
2000, as a whole, constitutes a clear and definite promise that if Plaintiff "returns to work"
following his FMLA leave, he would be "reinstated" as an employee of the Defendant.  No
statements in Employee handbook mention anything about losing your job or no guarantee of

your job upon return from long-term or short-term disability. See Exhibit A, Deposition Exhibit
5 . In fact, as Plaintiff states in his affidavit, he had no idea that he might not have a job after his
leave until he received the January 17, 2000 FMLA letter. He had taken disability leave several
years earlier and, at that time, him not having a job upon his return was never even mentioned or
discussed, and no conditions or terms were placed upon his leave. He was under the same
impression in this case, until he received the FMLA letter. After reading the letter, he realized
that there were terms that both sides had to live up to, and he accepted and agreed to those terms.
If he knew that Defendant would act in bad faith and not meet their end of the bargain, he would
have sough other options, such as postponing the surgery or arranging to take his vacation leave
before or after his FMLA leave, so that he could have extra time to heal fully and return to work
with no restrictions. In Plaintiff's view, he "returned to work" within the twelve week deadline,
keeping up his end of the bargain, while Defendant acted in bad faith, in breach of their end of
the deal, and denied him continued employment.
    Plaintiff has a viable claim for promissory estoppel, and Defendant is not entitled to
summary judgment as a matter of law.
V. THERE IS A DISPUTE OF FACT AS TO WHETHER A CONTRACT EXISTED,
AND WHETHER DEFENDANT BREACH ED THE CONTRACT
    Generally, an employer or an employee may terminate an at-will employment
relationship, for almost any reason or no reason, at any time. One narrow exception to this
doctrine, adopted in Staggs v. Blue Cross of Md., Inc., 61 Md.App. 381, 486 A.2d 798 (1985),
cert. denied, 303 Md. 295, 493 A.2d 349 (1985), concerns situations in which the at-will
employment relationship is modified by provisions in a personnel policy. Bagwell v. Peninsula
Regional Medica Center, 106 Md.App. 470, 490, 665 A.2d 297, 307 (1995). An exception to
this rule concerns cases where there is a disclaimer in writing that the policy does not form a
contract. See Elliott v. Board of Trustees of Montgomery County Community College, 655 A.2d
46, 104 Md.App. 93 (1995). There is no such disclaimer in this case. The statements of the
January 17, 2003 FMLA letter formed a contract and agreement that governed Plaintiff's leave.
Plaintiff was offered the terms of the letter, and accepted them by choosing to take a leave from
his job. Defendant breached the terms by acting in bad faith and not giving Plaintiff his job back,
not working with him, not treating him fairly and consistently, and not looking at other options or
other positions, when the "supervisor of logistics" position was available.
VI. THERE IS A DISPUTE OF ACT AS TO WHETHER DEFENDANT'S ACTIONS

AMOUNT TO FRAUD/DECEIT

Under Maryland law, intentional failure to disclose material information can amount to fraud, and the issue of scienter and intent are issues for the trier fo fact, even if a Defendant testifies that its failure to disclose was a mistake. The ruling in VF Corp. v. Wrexham Aviation Corp., 686 A.2d 647, 112 Md.App. 703 (1996), a case where fraud by failure to disclose was at issue, is instructive:

> Appellants argue that we must reverse the fraud judgment because appellee failed to generate a jury issue on the element of scienter. That argument overlooks the fact that the jury was entitled to infer scienter from the totality of the circumstances.
> When a party owes no legal obligation to speak, mere silence is not actionable fraud. If, however, "what is stated amounts to a 'partial and fragmentary' disclosure, that misleads because of its incompleteness, the 'legal situation is entirely changed.' "[citations omitted]. Moreover, fraud may consist in a suppression of the truth as well as in the assertion of a falsehood. The concealment becomes a fraud where it is effected by misleading and deceptive talk, acts, or conduct, or is accompanied by misrepresentations, or where, in addition to a party's silence, there is any statement, word, or act on his part, which tends affirmatively to the suppression of the truth, or to a covering up or disguising of the truth, or to a withdrawal or distraction of a party's attention from the real facts. [citations omitted]
> Appellants define scienter in a fraud action as "the actual awareness that a wrong is being done." We do not disagree with that definition. The trier of fact, however, may infer such awareness from the concealment of material facts. [citations omitted]. The jury was entitled to conclude that, under the Purchase Agreement, appellants had a duty to disclose the field audit report because its existence was a material fact that qualified appellants' earlier representations as to the financial condition of Wrangler. The jury was also entitled to conclude that appellants were well aware that they should have spoken up about the tax audit, and that they remained silent because they were afraid that appellee would consider the audit to be a "deal breaker."
>
>  *  *  *
>
> Appellants continue to insist that they did not know that they had a duty to disclose the tax audit report to appellee. They had every right to produce evidence in support of that contention. The jury, however, was entitled to reject that evidence and come to a contrary conclusion. The jurors were properly instructed that they were entitled to believe all, part, or none of the testimony presented and that they were permitted to draw reasonable inferences from the evidence.
>
> [Emphasis Added]

In this case, Defendant lied in it's phone message to Defendant, stating that "we cannot

accommodate that restriction," and intentionally failed to disclose that Plaintiff's employment
had been terminated, in order to put him "outside the box" of FMLA, and give them reason to
terminate his employment, without paying him severance.  Had Defendant told Plaintiff that his
employment was in jeopardy, he could have taken various actions to seek to protect his
employment status under FMLA, such as getting his restriction lifted, contesting the fact that his
job required lifting over 30 pounds, contest the fact that no accommodation could be made,
inquire about other jobs/positions, apply to use vacation or sick leave, etc.  Instead, Plaintiff
received a termination letter several weeks later on April 19, after he was "outside the box," and
had no recourse.
     Plaintiff relied, to his detriment, on Defendant's intentionally false statements and
omissions, and was thereby damaged and lost his job.  There are sufficient facts to support
Plaintiff's claim for fraud, and Defendant is not entitled to judgment as a matter of law.

                          CONCLUSION
     As to all of the counts in Plaintiff's Complaint, there are sufficient facts, when viewed in
a light most favorable to Plaintiff, support all of Plaintiff's causes of action.  In addition, there
are certain facts in dispute that must be decided by a trier of fact, and Defendant is not entitled to
judgment as a matter of law on any of the counts in Plaintiff's Complaint.

                                   Respectfully submitted,


                                   _____/S/_____
                                   J. Scott Morse, Esquire
                                   Bar ID 26017
                                   Law Office of J. Scott Morse, LLC
                                   334 St. Paul Place
                                   Baltimore, MD 21202
                                   (410) 539-1230
                                   Attorney for Plaintiff


                     CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 3rd day of October, 2003, a copy of the foregoing was
filed electronically and served on the following:
Brian Steinbach, Esquire
Epstein Becker & Green, PC
1227 25th Street, NW - Ste 700
Washington, DC 20037
Attorney for Defendant
                         _____/S/_____

```
                        J. Scott Morse, Esquire
```

IN THE DISTRICT COURT FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

Anthony Passauer                     *

    Plaintiff                    *

V                                    *     Civil Case No.: CCCB 03-CV-159

Quest Diagnostics Incorporated       *

    Defendant                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

ORDER

    UPON REVIEW AND CONSIDERATION of Defendant's Motion for Summary Judgment, and Plaintiff's response thereto, it is this _____ day of _____, 2003

    ORDERED that Defendant's Motion for Summary Judgment is DENIED.

_____
United States District Judge