| | | |
|---|---|---|
| **ANTHONY PASSAUER** | * | IN THE |
| 1911 Middlebrough Rd. | | |
| Baltimore, MD 21221 | * | CIRCUIT COURT |
| PLAINTIFF | | |
| v. | * | FOR |
| **QUEST DIAGNOSTICS, INC.** | * | BALTIMORE COUNTY |
| 1901 Sulphur Spring Rd. | | |
| Baltimore, MD 21227 | * | CASE NO.: |
| <u>Serve on:</u> | | |
| The Corporation Trust, Resident Agent | * | |
| 300 E. Lombard St. | | |
| Baltimore, MD 21202 | * | |
| DEFENDANT | * | |

\* * * * * * * * ** * * * *

## AMENDED COMPLAINT

1. Plaintiff at all times pertinent to this action has resided in Baltimore County, Maryland.

2. Defendant at all times pertinent to this action has been a corporation doing business in Baltimore County, Maryland.

3. The Court has jurisdiction and venue over this matter pursuant to the laws of Maryland and 29 USCA §2617(a)(2).

## FACTS COMMON TO ALL COUNTS

4. Plaintiff adopts herein all prior allegations of this Complaint.

5. Plaintiff was an employee of the Defendant as a "Job Coordinator'" having been hired in December, 1974.

6. Due to a shoulder injury which required shoulder surgery and recovery time, Plaintiff requested from Defendant a leave of absence from his job in December, 1999.

7. In a letter dated January 17, 2000 (attached as Exhibit 1), Defendant notified Plaintiff that Plaintiff's request for leave was granted, and that the leave was to begin on January 18,

2000. This leave was designated as Family Medical Leave Act, pursuant to the Defendant's company policy and the Family Medical Leave Act (28 USCA §2601 et seq., "FMLA"). Plaintiff was told by Defendant that upon return from leave "employees are generally reinstated to the same or equivalent job with the same pay, benefits, and terms and conditions of employment."

8. Additionally, in its January 17, 2000 letter, Defendant also told Plaintiff that he would be required to present a fitness-for-duty certificate from his doctor that "if the certificate sets out any restrictions on ability to perform the essential functions of your job, the Company will consider it a request for temporary accommodation and will work with you in an effort to accommodate you. Where your restrictions cannot be accommodated, the Company will consider other options, including requiring you to take additional leave or another open position."

9. On or about April 5, 2000, Plaintiff advised Defendant that he would be ready, willing, and able to return to work on April 10, 2000, prior to the full 12 weeks granted to him under the FMLA. Also at that time, Plaintiff presented Defendant with a fitness-for-duty certificate from Plaintiff's doctor (attached as Exhibit 2), The certificate stated that Plaintiff could return to work as of April 10, 2000, and that he was not to lift over 30 lbs. Until May 1, 2000.

10. In his position as a "Job Coordinator," Plaintiff primarily worked at the supervisory level. In the performance of his duties, it was not normal, essential, or necessary for him to lift mor than 30 lbs. Therefore, the temporary 30 lb. Lifting restriction placed on Plaintiff by his doctor would not have affected his essential job functions.

11. Despite Plaintiff's ability and desire to return to work, and notwithstanding

Defendant's policy of providing modified and/or transitional work assignments to its employees based upon medical disability, the Defendant made no attempt to return Plaintiff to his old job, to provide him with temporary accommodations, or find him an alternative position with the company. Instead, Defendant informed Plaintiff that he was not to return to work until he was "100%," i.e. on or after May 1, 2000.

12. Having been told by Defendant that he was not allowed to return to his job, and expecting to be returned to his job on May 1, 2000, Plaintiff did as Defendant instructed him to do and returned home to wait.

13. Unexpectedly, Defendant sent Plaintiff a letter on April 19, 2000 (attached as Exhibit 3), wherein Defendant told Plaintiff that his FMLA leave had expired, and that therefore Plaintiff no longer had any job restoration rights under FMLA.

14. Plaintiff then attempted to return to work in the first week of May 2000, but was advised by Defendant that neither his old job nor any equivalent job was available for him. He was not allowed to return to work, and was essentially fired.

15. Plaintiff never received the severance pay due to him as promised by the Defendant in the Defendant's Employee Benefits Handbook, which is 54 weeks of pay.

**I. VIOLATION OF FAMILY MEDICAL LEAVE ACT, 28 USCA §2601 et seq.**

16. Plaintiff adopts herein all prior allegations of this Complaint.

17. Defendant is a private sector employee who employs 50 or more employees for at least 20 work weeks in the current or preceding calendar year.

18. Plaintiff worked for Defendant, a covered employer.

19. Plaintiff had worked for Defendant for at least 12 months and for at least 1250 hours prior to taking FMLA leave in January 2000.

20. Plaintiff worked in a location where at least 50 employees were employed by Defendant within 75 miles.

21. Plaintiff was entitled to take reasonable leave, not to exceed a total of 12 workweeks of leave during any 12 month period, when Plaintiff's own serious health condition made the Plaintiff unable to perform the functions of his job.

22. Plaintiff returned to work as soon as he was well and able to perform his job.

23. Plaintiff returned to work prior to the end of the 12 week period but was nonetheless terminated by Defendant from his job in ==willful== violation of the FMLA and Defendant's stated policies.

24. Plaintiff was damaged as a result of Defendant's violation of the FMLA.

WHEREFORE, Plaintiff seeks compensatory damages in the amount of $100,000, which consists of lost wages, salary, benefits, severance pay, and other compensation; plus liquidated damages; plus reasonable attorney fees, expert witness fees, and court costs

## II.  NEGLIGENT MISREPRESENTATION

25. Plaintiff adopts herein all prior allegations of this Complaint.

26. Defendant owed Plaintiff a duty of care as an employee, and a someone who they knew would be relying upon their representations, and could be damaged by that reliance.

27. Defendant made numerous, negligently false representations to Plaintiff.

28. Plaintiff reasonably relied upon Defendant's negligently false representations.

29. Plaintiff was injured and damaged as a result of Defendant's negligent misrepresentations.

WHEREFORE, Plaintiff seeks compensatory damages in the amount of $100,000, which consists of lost wages, salary, benefits, severance pay, and other compensation; plus liquidated

damages; plus reasonable attorney fees, expert witness fees, and court costs.

### III.  PROMISSORY ESTOPPEL / DETRIMENTAL RELIANCE

30.  Plaintiff adopts herein all prior allegations of this Complaint.

31.  Defendant assured Plaintiff that upon Plaintiff's return from FMLA leave, he would be reinstated to his same or similar job, or in the alternative that Defendant would attempt to accommodate any restrictions on Plaintiff's ability to perform the essential functions of his job.

32.  In reasonable reliance upon Defendant's aforementioned assurances, Plaintiff chose to take a leave of absence from work to undertake treatment for hi serious health condition.

33.  Defendant failed to follow thorough on their promises and assurances.

34.  As a result of Plaintiff's reasonable reliance upon Defendant's promises and assertions, Plaintiff was terminated from his job, lost pay, lost severance pay, and was otherwise injured and damaged.

WHEREFORE, Plaintiff seeks compensatory damages in the amount of $100,000, which consists of lost wages, salary, benefits, severance pay, and other compensation; plus liquidated damages; plus reasonable attorney fees, expert witness fees, and court costs

### IV. CONTRACT

35.  Plaintiff adopts herein all prior allegations of this Complaint.

36.  Under Maryland law, Defendant's promises, both oral and in writing (letters and Employee Handbook) form a contract between the Plaintiff and Defendant.

37.  Plaintiff offered specific terms, benefits, etc., as to Plaintiff's employment and leave of absence, in consideration for Plaintiff's continued employment with Defendant.

38.  Plaintiff accepted those terms, in consideration for pay and benefits, by working for Defendant and taking a leave of absence under FMLA.

39. Defendant breached the terms of the employment contract between the parties by firing Plaintiff and by not giving him his severance pay.

40. Defendant's breach of contract was accompanied by bad faith, evil motive, malice, and intent to injure, and was done so that Defendant could terminate a long-time employee and not have to pay severance pay, and so that they could hire cheaper labor to take Plaintiff's place.

WHEREFORE, Plaintiff seeks compensatory damages in the amount of $100,000, which consists of lost wages, salary, benefits, severance pay, and other compensation; plus liquidated damages; plus reasonable attorney fees, expert witness fees, and court costs; plus punitive damages in the amount of $1,000,000.00

## V.  FRAUD / DECEIT

41. Plaintiff adopts herein all prior allegations of this Complaint.

42. Defendant made numerous, knowingly false representations (lies) to Plaintiff with the intent to defraud and injure Plaintiff, and to never follow through on their promises.

43. Plaintiff reasonably relied upon Defendant's fraudulent representations.

44. Plaintiff was injured and damaged as a result of Defendant's fraudulent acts.

WHEREFORE, Plaintiff seeks compensatory damages in the amount of $100,000, which consists of lost wages, salary, benefits, severance pay, and other compensation; plus liquidated damages; plus reasonable attorney fees, expert witness fees, and court costs; plus punitive damages in the amount of $1,000,000.00.

## VI.  WRONGFUL DISCHARGE

45. Plaintiff adopts herein all prior allegations of this Complaint.

46. Plaintiff was wrongfully discharged in violation of state and federal law and public policy, including but not limited to the Family Medical Leave Ave.

WHEREFORE, Plaintiff seeks compensatory damages in the amount of $100,000, which consists of lost wages, salary, benefits, severance pay, and other compensation; plus liquidated damages; plus reasonable attorney fees, expert witness fees, and court costs; plus punitive damages in the amount of $1,000,000.00.

_____/S/_____
J. Scott Morse, Esquire
Law Office of J. Scott Morse, LLC
334 St. Paul Place
Baltimore, MD 21202
(410) 539-1230
Attorney for Plaintiff