IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **ANTHONY PASSAUER,** <br> **Plaintiff,** <br> v. <br> **QUEST DIAGNOSTICS INCORPORATED,** <br> **Defendant.** | **Civil No.: CCB 03-CV-159** |

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Quest Diagnostics Incorporated ("Quest') respectfully submits this reply in support of its motion for summary judgment on Plaintiff's five-count complaint. As discussed below, Plaintiff's Memorandum in Support of Plaintiff's Response to Motion for Summary Judgment ("Response") is a classic attempt to avoid addressing the weakness of a case by instead creating a smokescreen of irrelevant issues, improper assertions of "facts" and "beliefs" that have no record support, newly asserted bases for claims that ignore prior admissions, and other unsupported arguments. Once the smoke is cleared, however, there remain no disputed issues of material fact, and for the reasons stated below and in Quest's opening Memorandum of Law ("Memorandum"), Quest is entitled to judgment as a matter of law on all the claims against it.[1]

**I.   FACTUAL ISSUES**

With one exception noted below, Plaintiff does not appear to dispute any of Quest's

---

[1] Plaintiff also is seeking to avoid the deficiencies in his case by filing a belated request for leave to amend his complaint to allege that the asserted FMLA violation in count I was "willful" and to add a new count VI alleging a wrongful discharge. For the reasons set forth in Quest's separately filed opposition to that request, filed the same day as this Reply, these proposed amendments should be denied on the grounds of, among other things, untimeliness and futility.

DC:235108v1

Statement of Undisputed Material Facts. However, he does attempt to inject some additional "facts" that are unsupported by any evidence, contradict his deposition testimony, or are supported only by conclusory statements in his own affidavit. (Response Ex. B.) For the following reasons, consideration of these matters should be rejected.[2]

Most egregiously, Plaintiff contends, without any evidentiary support whatsoever, that the posted position of "supervisor of logistics" for which he applied in May 2000 "was basically Plaintiff's job with a new title." (Response at 1.) To the contrary, the undisputed evidence shows that this job was quite different from Plaintiff's former job as a warehouse coordinator, which, according to him, involved tracking shipping/inventory on a computer and counting boxes/supplies, and directing the work of two other warehouse employees. (Response at 4 and Ex. B at 2.) Rather, as the job description and the posting for the supervisor of logistics position show, it involved responsibility for scheduling and supervising the couriers, or drivers, who pick up and deliver medical specimens and supplies to Quest's clients, and responsibility for maintenance and repair of fleet vehicles. (Supplemental Declaration of Marilyn Martin Holthaus ("Holthaus Supp. Dec.") (attached as Ex. A), ¶¶3-4 and Exs. 2 and 3.) Furthermore, the undisputed evidence shows that the position became available due to the departure of another employee on May 1, 2000, not Plaintiff's failure to return to work, and was not posted until April 26, 2000, three weeks after Plaintiff sought to return to work on April 5. (Id., ¶¶ 2-3 and Exs. 1 and 2.) Thus, Plaintiff's suggestion that Quest terminated Plaintiff and then asked him to apply for his own job is not only unsupported and wholly speculative, but also contrary to indisputable fact. Therefore, it should be disregarded.

---

[2] Although Plaintiff has filed a separate Motion to Compel Discovery, he has not contended that such discovery is needed for him to oppose Quest's motion, much less invoked the procedure of Fed. R. Civ. P. 56(e).

Plaintiff also asserts his conclusory "belief" in a number of purported facts that have no record support and therefore also must be disregarded and/or stricken because they violate the requirements of Fed. R. Civ. P. 56(e) that a motion for summary judgment be opposed by presentation of specific facts and that an opposing affidavit be based on personal knowledge and set forth facts that would be admissible in evidence. See, e.g., Evans v. Technologies Applications & Service, 80 F.3d 954, 962 (4th Cir. 1996) (summary judgment affidavits cannot be conclusory or based on hearsay); Sterling Acceptance Corp. v. Tonmark, Inc., 227 F. Supp. 2d 454, 459-60 (D. Md. 2002) (Harvey, J.) (striking statements in affidavit based on affiant's "understanding" or constituting hearsay).

For example, Plaintiff asserts that after meeting with Human Resources personnel on or about April 5, 2000, he "believed that he was now back to work as an employee, and had complied with FMLA." (Response at 2 and Response Ex. B at 2.) However, he cites no basis for this "belief" other than the mere fact that he had tendered his doctor's certificate containing a thirty pound lifting restriction. To the contrary, in his deposition he testified that all he did on April 5 was drop off his doctor's certificate; he indicated no conversation whatsoever, and admitted that by the time he got home he had a telephone message from Ms. Martin. (Dep. Tr. 55:20-56:10; 58:7-11.) His affidavit also recites no conversation; rather, it states only that this was his "view." (Response Ex. B at 2.) The statements in his affidavit as to his "view" and his "belief" are not evidence and therefore violate the requirements of Rule 56(e). Accordingly, these portions of his affidavit should be stricken or otherwise disregarded. Moreover, any such "belief" was immediately dispelled by the telephone message he received from Ms. Martin that informed him, in no uncertain terms, that Quest would not allow him to return to work while he

3

remained under a lifting restriction.

Similarly, Plaintiff asserts that even after receiving Ms. Martin's message, "he believed that they ha[d] accepted him back to work, but that Defendant preferred he remain out on disability until his restriction was lifted, and that he should report for duty at that time." (Response at 3.) Again, he cites no basis for this "belief." Even his affidavit states nothing more than his "belief," <u>without any factual basis</u>, "that my return to work under FMLA had been accepted, in person, by the Human Resources office earlier that day, and that my employer was exercising their option, under the FMLA, to have me take additional approved leave." (Response Ex. B at 1.) Again, Plaintiff's assertion of such a "belief" is not evidence, violates the requirements of Rule 56(e), and should be stricken or otherwise disregarded.[3]

Plaintiff further asserts that even after he received the April 19, 2000 letter[4], he "still believed that, even though his technical job restoration rights under FMLA had expired, Defendant still wanted him as an employee, based upon the telephone message and the repeated written assertions that they would work with him." (Response at 3.) Once again, he cites no evidentiary support for this "belief," and nothing in the language of the telephone message or the written communications with him provides any such support. Therefore this assertion also should be disregarded.

Finally, Plaintiff does dispute whether it was an essential function of his job to lift over

---

[3] For the same reason, all other portions of Plaintiff's affidavit that state what he believed or his feelings, especially all of the fifth paragraph, should be stricken as in violation of Rule 56(e).

[4] Plaintiff mistakenly identifies the April 19, 2000 letter as being dated May 19, 2000, and erroneously states that this letter informed him that he was terminated, when in fact it only informed him that his FMLA job restoration rights had been lost. The letter also informed him that for benefit purposes he continued to be carried on the payroll. (<u>See</u> Dep. Ex. 10.) Plaintiff testified in his deposition that he was told he was terminated on May 10, 2000. (Dep. Ex. 71:16-72:4, 85:14-17; Dep. Ex. 11 at 3 (P-003).) Quest's paperwork shows a May 12, 2000 termination date. (Holthaus Supp. Dec. ¶ 11 and Ex. 8.)

4

thirty pounds. This issue is discussed in part II(A)(1), below.

## II.  ARGUMENT

### A.  PLAINTIFF CANNOT ESTABLISH A VIOLATION OF THE FMLA

#### 1. Quest Did Not Violate the FMLA by Declining to Permit Plaintiff to Return to Work with a Thirty Pound Lifting Restriction

Plaintiff asserts that there is a material issue of fact as to whether lifting over thirty pounds was an essential function of his position, although he concedes there is no duty of accommodation under the FMLA. (Response at 3-4.) In support, Plaintiff submits an affidavit in which he concedes that the did on occasion have to lift over thirty pounds, but contends that he did so less than 1% of the time and had two employees working under him who could do that lifting during the few weeks that he was on restriction. (Response Ex. B at 2.) He further contends that Quest could have acknowledged such an accommodation. This attempt to create an issue of material fact fails on two grounds. First, under the FMLA, unlike the ADA, there is no duty to accommodate any restriction. (See Memorandum at 15 and authority cited therein.) Secondly, Plaintiff's assertions and knowledge as to the nature of his job duties are based on that job as it existed at the Owings Mills warehouse, prior to the consolidation of that facility with the Caton Avenue warehouse that occurred while he was out on FMLA leave. He specifically conceded that he did not know to what extent the job might have been different at Caton Avenue. (Dep. 89:16-93:9.) Thus, the only evidence as to the nature of his job at Caton Avenue is that proffered by Quest, which shows that in the view of the Warehouse Manager Larry Bauernshub all jobs at that location required lifting more than thirty pounds as an

essential part of the job.[5]

As there is no material issue of fact that lifting over thirty pounds was an essential part of the work of all employees at the Caton Avenue warehouse, Quest did not violate the FMLA by failing to allow Plaintiff to return to work with such a restriction. For this and the other reasons stated in Quest's Memorandum at 15-17, Plaintiff's FMLA claim should be dismissed.

### 2. Plaintiff's FMLA Claim is Also Barred by the Statute of Limitations

Plaintiff's attempt to avoid application of the two-year statute of limitations has even less merit. He does not dispute that a "willful violation" requires a showing that the employer must have known its conduct to be wrong or have shown reckless disregard for the matter in light of the statute, or that he has failed to allege willfulness in his Complaint.[6] Plaintiff nonetheless attempts to invoke the willfulness standard by asserting, without citation to any record evidence, that "Defendant basically lied in contending that lifting over 30 pounds was an essential function of Plaintiff's job, and that no accommodation could be made." (Response at 4.) Such a bald assertion is insufficient to establish knowledge or reckless disregard, and ignores his burden of producing evidence to show there is a genuine issue of material fact as to whether Quest acted willfully.

Most importantly, Plaintiff fails to present any evidence to contradict Ms. Neidenbach's sworn statement that Mr. Bauernshub told her that all of the jobs in the Caton Avenue

---

[5] Plaintiff asserts (Response at 3-4) that his counsel has had conversations with Ali Haghgoo in which Mr. Haghgoo allegedly agreed that lifting over 30 pounds was not an essential part of Plaintiff's job, that defense counsel allegedly "hassled" him on his cell phone while he was at the hospital with his wife, and that he allegedly did not sign the affidavit (actually, a Declaration) submitted by Quest because the statements are untrue. None of these assertions are supported by a sworn declaration or affidavit, as required by Fed. R. Civ. P. 56(e). Accordingly, Quest requests that these assertions be stricken from Plaintiff's Response and disregarded by the Court.

[6] Although not mentioned in his Response, as discussed in note 1, above, Plaintiff subsequently filed a belated request for leave to amend his complaint to, among other things, allege willfulness, which should be denied.

warehouse required lifting more than thirty pounds and that he did not have any work that could accommodate Plaintiff's lifting restriction. (See Memorandum Ex. D, ¶2.) Even if Mr. Bauernshub's statement was incorrect (although, as noted above, Plaintiff has offered no evidence to the contrary with respect to the work at the Caton Avenue facility), there is no evidence that even remotely suggests that the decision makers – Ms. Neidenbach and Ms. Martin – acted in anything other than good faith based on the restriction contained in the certification Plaintiff presented, the information provided by Mr. Bauernshub, and their own knowledge. Thus, Plaintiff lacks <u>any evidence</u> that would show that they acted with reckless disregard for the matter in light of the FMLA statute, much less with knowledge that their actions were wrong. (See Memorandum at 17-19.)[7] In effect, he simply argues that their action was mean spirited. Meanspiritedness does not, however, establish knowledge or reckless disregard. Therefore, the three-year statute of limitations does not apply, and Plaintiff's claim is barred by the two-year statute of limitations.

Finally, Plaintiff's belated effort to asset a basis for equitable tolling, based on the asserted failure of his prior counsel to inform him of the two-year statute of limitations (Response at 5), must be rejected. Most importantly, this assertion is unsupported by any declaration, affidavit, or other evidence as required by Rule 56, and therefore should be stricken from the record and disregarded. In addition, such an argument turns on its head the typical (though by no means successful) argument for equitable tolling of a statute of limitations, i.e., that the plaintiff had no counsel to advise him of the statute. To the contrary, a

---

[7] The decision in <u>Hoffman v. Professional Med Team,</u> cited in Quest's Memorandum at 19 and attached thereto as Ex. F, is now reported at 270 F. Supp. 2d 954 962-64 (W.D. Mich. 2003) (no willful violation where no evidence employer knew its conduct was wrong and its position did not show reckless disregard for the matter in light of the FMLA).

Plaintiff who had counsel should not be heard to complain that he did not know of the statute of limitations. If, in fact, Plaintiff's prior counsel did not inform him of the two year statute of limitations, his proper remedy is in a possible claim against that counsel, not tolling of the statute. Furthermore, Plaintiff does not dispute that he had in his possession the draft complaint prepared by his prior counsel. (See Memorandum at 13, 19 and Holthaus Dec. Ex. 6.) It would have been a simple matter for him to have used this draft complaint to file his own pro se complaint. As stated in Quest's Memorandum at 19, Plaintiff knew of a possible claim and how to present it, and therefore cannot now claim that he should be relieved from the effects of the statute of limitations.

### B.  PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY ERISA

Plaintiff attempts to avoid ERISA preemption by asserting that "[t]his case is not about whether Plaintiff is entitled to his severance pay, it is about whether Defendant violated FMLA." (Response at 5.) This assertion ignores the fact that Quest does not contend that his FMLA claim is preempted by ERISA; rather, it is his four common law claims, the main thrust of each of which is that he lost his opportunity to receive severance pay, that Quest contends are preempted. In light of Plaintiff's assertion, the Court properly should treat each of the common law claims as withdrawn or merged into a single FMLA claim, which for the reasons already stated is either barred by the statute of limitations or without merit. Alternatively, to the extent the common law claims are attempts to assert a right to benefits under the FMLA, they should be treated as preempted by the enforcement mechanisms of the FMLA.

Plaintiff further argues that his claim of severance pay is merely a theory of possible damages, not a claim of improper administration or breach of fiduciary duty, and therefore

does not relate to an ERISA covered plan. (Response at 6.) This contention ignores the fact that, as discussed in Quest's Opposition at 20, consideration of each of the common law claims would require interpretation of the Severance Plan in order to determine whether or not he should have been entitled to severance under the circumstances of his case, as well as whether Quest was trying to avoid its ERISA obligations.[8] Thus, he has failed to show that these claims are not preempted by ERISA.

Finally, Claimant does not dispute that if his common law claims were recast as a single ERISA claim, such a claim would still fail. (See Memorandum at 21.) Thus, his common law claims should not be treated as an ERISA claim, but instead dismissed on ERISA preemption grounds.

### C. PLAINTIFF CANNOT ESTABLISH A CLAIM OF NEGLIGENT MISREPRESENTATION

Plaintiff utterly fails to show any evidence that Quest made any false statement to him, much less that he detrimentally relied on any such statement. Thus, his claim of negligent misrepresentation should be dismissed.

As an initial matter, Plaintiff does not dispute Quest's contention (Memorandum at 24) that there is no basis for finding that Quest owed Plaintiff any special duty of care. His inability to establish this essential element of the tort of negligent misrepresentation alone bars such a claim.

Assuming, arguendo, that Quest did owe Plaintiff a duty of care, Plaintiff does not dispute Quest's contention (Memorandum at 22-23) that there were no false, much less

---

[8] As discussed below, in at least one of his claims Plaintiff specifically contends, albeit without any evidentiary support, that he was denied an opportunity to return to work before the end of his FMLA leave in order to avoid having to give him severance pay.

negligently false, statements in the telephone message that Ms. Martin left him on March 5, 2000, and that in any event he cannot establish detrimental reliance on anything in that message. Instead, he now relies solely on Quest's letter to him dated January 17, 2000 concerning the terms of his FMLA leave. (Response at 6-8.)

Thus, Plaintiff asserts that he relied upon allegedly false statements in the January 17 letter that Quest would "work with him in an effort to accommodate him" and "treat him in a fair and consistent manner" in deciding to take a leave of absence. (Response at 6.) However, this assertion ignores entirely the undisrupted, and conceded, facts: (1) that he did not even receive the January 17 letter until January 19, 2000, after he has already begun his leave of absence and undergone his scheduled surgery (Dep. 45:8-48:3 and Dep. Exs. 6-7; Holthaus Dec. ¶8 and Ex. 2); and (2) that the surgery was something that he had to have done and he would have taken leave even if Quest had not offered FMLA leave.[9] (See Dep. 42:9-21, 43:8-11, 44:4-8, 44:13-45:1, 45:8-47:17, 100:13-19). Thus, he could not possibly have relied on anything in that letter in deciding to take a leave of absence. (See Memorandum at 25-26.) Moreover, he proffers no evidence that these statements were not true, much less that Quest was in any way negligent in making these statements.[10]

Plaintiff also appears to argue that Quest made a negligent misrepresentation because paragraph 8 of the January 17 letter stated that if restrictions in a certification could not be

---

[9] Quest notes that in its citation to the same testimony in its Memorandum at 6, first full paragraph, it inadvertently omitted the page number from the last citation. The proper cite should be "Id. at 42:20-21".

[10] Plaintiff's assertion that if he had known the allegedly false statements were not true, he would have maximized his time off by taking vacation time first and then his FMLA leave (Response at 6), ignores the facts that Quest's policy prohibited the use of paid leave time to extend the twelve week period (see Dep. Ex. 4 at P-356), and that Quest could and would have retroactively designated such initial vacation time as FMLA leave. (Holthaus Supp. Dec. ¶ 13.) See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002) (rejecting regulation that prevented employer from retroactively designating qualified leave as FMLA leave).

accommodated, Quest would consider other options, inquiring requiring additional leave or taking another open position, and did not state that he would lose his job. (Response at 7.) This ignores the simple facts that (1) requiring additional leave by its very nature could lead to the exhaustion of all of his FMLA leave, and (2) Plaintiff admittedly was aware that there was no promise that he would have a job if he could not come back to work within the 12 weeks of FMLA leave. (Dep. 48:8-11, 50:12-51:10.) It is uncontested that requiring additional leave is exactly what Quest did.

Plaintiff further contends that he believed that he had already been accepted as "returning to work" and that Ms. Martin's message was "merely a request for him to s[t]ay on leave, at the behest of the Defendant." (Response at 7.) As already discussed above, there is no factual basis for Plaintiff's alleged belief that he had already returned to work. To the contrary, Ms. Martin's message made it clear that he <u>had not been accepted to return and would not be so accepted until his restriction was removed</u>. (See Dep. Ex. 9.) Nothing in that message remotely suggested that the delay in his return was simply a "request" by Quest. Moreover, that message made it quite clear what Plaintiff needed to do to return to work: get a certification that did not contain the lifting restriction. It is undisputed that Plaintiff made no attempt to try to get the restriction removed right away, and made no effort to dispute Quest's position that the restriction constituted light duty and that Quest could not accommodate that restriction. (Memorandum at 10.) There is simply no basis for Plaintiff's claim (Response at 6) that he did not know that his return to work was not accepted as an appropriate return under

the FMLA on April 5.[11] He lost any opportunity to protect his employment status under the FMLA by his own inaction, not any alleged negligent misrepresentation by Quest.[12]

### D. PLAINTIFF CANNOT ESTABLISH A CLAIM OF PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

Plaintiff does not dispute that, as noted above and discussed in detail in Quest's Memorandum at 25-26, his decision to take leave and to undergo surgery had nothing whatsoever to do with any promises by Quest concerning what would happen when he sought to return to work. Indeed, he admits that he had no idea that he might not have a job after his leave until he received the January 17 letter (Response at 9, Ex. B. at 1), which as discussed above occurred on January 19, <u>after</u> he underwent surgery and began his leave. Nor does he dispute that the January 17 letter made it clear that job restoration was conditional; that it at best contained only a promise to accommodate if possible; and that Quest did fulfill these provisions of the letter. (<u>See</u> Memorandum at 26.) On this basis alone, his promissory estoppel claim must fail.

Although Plaintiff previously alleged that the basis for his promissory estoppel claim was that he took his leave of absence in alleged reliance on alleged assurances that on return from

---

[11] Plaintiff's claim that if he had known that his attempt to return to work on April 5 had not been accepted (which, as shown above, he clearly did know), he would have applied to use vacation or sick leave (Response at 7-8), ignores the fact that by that point he had no leave available, as he had used it to "top off" the short-term disability payments that he received. (Holthaus Supp. Dec. ¶¶ 6-11 and Exs. 4-6; Dep. 49:4-50:14.) In any event, even if he had such leave available, it would only have served to provide him a continued "top off" of his short term disability payments for his extended absence; it would not have protected him from the loss of his FMLA job restoration rights. (Holthaus Supp. Dec. ¶12.)

[12] Plaintiff's reliance (Response at 8) on <u>Lubore v. RPM Associates, Inc.</u>, 109 Md. App. 312, 674 A.2d 547 (1996), is misplaced. Most importantly, the <u>Lubore</u> court found that, unlike the present case, a duty of care existed because of the special relationship that could arise in a situation involving two high-level executives engaged in pre-contractual employment negotiations. 109 Md. App. at 336-37, 674 A.2d at 559-60. Moreover, in <u>Lubore</u>, unlike here, there was considerable evidence that the defendant had affirmatively represented only part of the truth, in particular omitting to disclose important terms of an employment agreement. As discussed above, Quest did not fail to state any important fact: to the contrary, it had informed Plaintiff that a failure to return to work by the end of his FMLA leave would mean that he lost his job restoration rights.

FMLA leave he would be reinstated (Complaint, ¶¶ 331-34), Plaintiff nonetheless now, for the first time, complains that "[n]o statements in Employee handbook mention anything about losing your job or no guarantee of your job upon return from long-term or short-term disability." (Response at 8-9). However, there is no evidence that he relied on the absence of such statements in deciding to take his leave. To the contrary, he testified that he took his leave because he had to undergo the surgery, regardless. (See Memorandum at 6, 25-26.) He also references a prior disability leave from which he returned without incident (Response at 9), but neglects to mention that he admittedly was never out 12 weeks before, or that even after his prior leave he admittedly could not return until he obtained approval to do so. (Dep. 88:21-89:6.) Finally, he also newly asserts that he fulfilled his "end of the bargain" by returning to work within the twelve week deadline, but Quest failed to fulfill its obligations. (Response at 9.) This assertion fails on two grounds. First, because Plaintiff did not begin his leave in reliance on the January 17 letter, it is irrelevant whether or not he later decided to "accept and agree" to those terms; to the contrary, he had no choice but to abide by the terms of the letter. Second, as discussed above, in any event Quest did fulfill its obligations under the terms of the letter. Thus, even if these newly added assertions are considered, Plaintiff still cannot establish a claim for promissory estoppel.

### E.  PLAINTIFF CANNOT ESTABLISH A BREACH OF CONTRACT CLAIM

Plaintiff now bases his contract claim only on the January 17 letter, dropping his prior reliance on the Benefits Handbook, and claims that this letter formed a contract and agreement that governed his leave. (Response at 9.) However, as already discussed above and in Quest's Memorandum at 25-26 and 28, Plaintiff cannot claim that he chose to take a leave

from his job based on the terms of this letter, as it is undisputed that he did not even receive the letter until after he had already begun his leave.

Furthermore, even assuming, for the purposes of argument only, that the January 17 letter somehow constituted a contractual agreement, Plaintiff cannot show that Quest breached its terms. First, the January 17 letter did not change his employee at will status; at most, it only required that the Quest grant the benefits stated therein. Second, Plaintiff has admitted that he has no factual basis for alleging that Quest acted in bad faith and in order to terminate him and not have to pay severance. (Dep. 97:4-98:6). Third, as already discussed, Quest fulfilled the terms of the letter: when Plaintiff presented a certificate that contained a restriction, it attempted to accommodate him, determined that it could not do so, and then required him to take additional leave. The fact that this additional leave took him beyond the job protection period of the FMLA in no way constitutes evidence of a breach of the terms of the January 17 letter. Fourth, there is no evidence that Plaintiff was not treated fairly and consistently in accordance with company policies. In fact, Claimant admitted that he was unaware of anyone who was in a situation like his, or of anyone else who took FMLA leave and came back to work. (Dep. 87:11-15.) Finally, as discussed above there is no evidence that any other position was available. In particular, there is no evidence the supervisor of logistics position that was filled in May was even open at the time that Plaintiff first sought to return to work on April 5. To the contrary, the position was not posted until April 26, 2000. (Holthaus Supp. Dec. ¶ 3 and Ex. 2.) In any event, it is undisputed that this position involved an entirely different type of work from what Plaintiff had previously been performing. (Holthaus Supp. Dec. ¶¶ 3-4 and Exs. 2 and 3.) Thus, Plaintiff has failed to show that there is any disputed issue of

fact as to this claim and his breach of contract claim also must fail

### F.  PLAINTIFF CANNOT ESTABLISH A CLAIM OF FRAUD OR DECEIT

As discussed in Quest's Memorandum at 30, Plaintiff testified that the alleged false representations upon which he relies for his fraud claim are the alleged promises in the Benefits Handbook and the January 17 letter that Quest would offer him a job or provide him with severance, plus a claim that he was led to believe that he would be interviewed for the supervisor of logistics position for which he applied on May 8, 2000. In his Response, Plaintiff does not dispute that, as shown in Quest's Memorandum at 31-33, Plaintiff cannot establish a fraud claim based on these alleged false representations. On this basis alone, this claim should be dismissed.

> Plaintiff nonetheless seeks to raise a new claim that he was defrauded because:
>
> Defendant lied in it's [sic] phone message to Defendant, stating that "we cannot accommodate that restriction," and intentionally failed to disclose that Plaintiff's employment had been terminated, in order to put him "outside the box" of FMLA, and give them reason to terminate his employment, without paying him severance.

(Response at 11.) As an initial matter, of course, Plaintiff's prior testimony that for his fraud claim he was only relying on statements in the Benefits Handbook and the January 17 letter, plus allegedly being led to believe that the would be interviewed for another position, bars him from raising these new assertions. Cf. Rohrbough v. Wyeth Laboratories, Inc., 916 F. 2d 970, 975-76 (4th Cir. 1990) (disregarding affidavit that contradicted witness's own prior testimony). Even assuming, however, for the purpose of argument only, that these new assertions can be considered, as discussed below Plaintiff still cannot establish a claim of fraud.

Plaintiff's newly minted attempt to rely on Ms. Martin's telephone message as the basis

15

for a fraud claim has no merit. First, Ms. Martin's statement that "we cannot accommodate that restriction" was not false, as the only evidence as to what Plaintiff's tasks would be at the Caton Avenue location shows that it would require lifting over thirty pounds and that Plaintiff's restriction could not be accommodated. Second, even if this was incorrect, there is no evidence that Ms. Martin or Ms. Neidenbach knew it was false or acted with reckless indifference as to its truth; indeed, they had no reason to believe otherwise, particularly as Plaintiff never disputed it. Finally, there is no evidence whatsoever that the statement was made with intent to defraud; to the contrary, as noted above, Plaintiff concedes that he has no evidence that Quest acted in bad faith and in order to terminate him and not have to pay severance. (Dep. 97:4-98:6). Thus, he cannot establish at least one, and more likely several, of the five requirements for a fraud claim (e.g., the making of a false representation, knowledge or reckless disregard as to its falsity, and/or made for the purpose of defrauding).

Plaintiff's equally new attempt to rely upon an asserted failure to disclose that his employment had been terminated has even less merit. First, there is no evidence that Plaintiff's employment was terminated on April 5 or at any time prior to May 10, 2000. To the contrary, the evidence shows only that in the April 19, 2000 letter (Dep. Ex. 10) Quest informed Plaintiff that he had lost his FMLA-protected job restoration rights (not that he was terminated, as Plaintiff incorrectly asserts). Even then Plaintiff was told that he would remain on the payroll to protect his other benefits. Thus, there was no failure to disclose because there had been no termination.[13] Secondly, Plaintiff admittedly knew from the January 17 letter that if he did not

---

[13] Plaintiff places great emphasis on language in VF Corp. v. Wrexham Aviation, 112 Md. App. 703, 713-17, 686 A.2d 647, 652-54 (1996) that concealment may, under some circumstances, be a fraud and that the factfinder in that case was entitled to reject evidence that the defendants did not know that they had a duty of disclosure. He neglects to mention, however that the Court of Appeals reversed this decision, and held that the evidence was

16

return to work by the end of twelve weeks, i.e. by April 11, he would lose his job restoration rights. Thus, when Ms. Martin told him that Quest could not allow him to return to work with the thirty pound lifting restriction, he already knew that his employment was in jeopardy. Accordingly, he cannot establish any false statement, whether of commission or omission. Third, as with Ms. Martin's statement, there is no evidence that these alleged statements or omissions were made with any intent to defraud, in particular to provide a reason to terminate his employment without paying him severance. In this regard it is particularly important to remember that <u>all</u> the elements of a fraud claim must be established by <u>clear and convincing evidence</u>. <u>VF Corp. v. Wrexham Aviation</u>, 350 Md. at 704, 715 A.2d at 193.

Thus, whether on the bases Plaintiff originally testified that he relied and that Quest previously showed were insufficient (Memorandum at 30-31), or on the new grounds Plaintiff improperly raises in his Response, Plaintiff simply lacks the evidence to show Quest engaged in any fraudulent action. Accordingly, his fraud claim also should be dismissed.

### III.   CONCLUSION

For the reasons stated above and in Quest's Memorandum, (1) Plaintiff cannot establish a violation of the FMLA and in any event his FMLA claim is time-barred; (2) Plaintiff's four common law claims are preempted by ERISA, and he cannot establish a claim under ERISA; and (3) even if the common law claims are not preempted, Plaintiff cannot establish any of these claims. Accordingly, there are no genuine issues of material fact to be tried and

---

insufficient for the jury to find fraud. <u>VF Corp. v. Wrexham Aviation</u>, 350 Md. 693, 695, 703, 715 A.2d 188, 189, 192 (1998).

Defendant Quest Diagnostics Incorporated is entitled to judgment as a matter of law on all counts.

          Respectfully submitted,

          _____/s/_____
          Frank C. Morris, Jr., Esq.
          Bar No. 05157
          Brian Steinbach, Esq.
          Bar No. 024849
          EPSTEIN BECKER & GREEN, P.C.
          1227 25th Street, N.W., Suite 700
          Washington, D.C. 20037
          (202) 861-0900

          Attorneys for Defendant
          Quest Diagnostics Incorporated

Dated: October 17, 2003

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 17, 2003, a copy of Defendant's Reply in Support of Motion for Summary Judgment, together with supporting material, was electronically filed and served on the following:

>J. Scott Morse, Esq.
>Law Office of J. Scott Morse, LLC
>334 St. Paul Place
>Baltimore, MD 21202
>
>Attorneys for Plaintiff

>_____/s/_____
>Brian Steinbach, Esq.
>Bar No. 024849
>EPSTEIN BECKER & GREEN, P.C.
>1227 25th Street, N.W., Suite 700
>Washington, D.C. 20037
>(202) 861-0900
>Fax: (202) 296-2882