IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **ANTHONY PASSAUER,**<br><br>    **Plaintiff,**<br><br>  v.<br><br>**QUEST DIAGNOSTICS INCORPORATED,**<br><br>    **Defendant.** | Civil No.: CCB 03-CV-159 |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
REQUEST FOR LEAVE TO AMEND COMPLAINT**

Now comes Defendant, Quest Diagnostics Incorporated ("Quest"), by its attorneys, and opposes Plaintiff's Request for Leave to Amend Complaint, filed October 6, 2003. By his Request, filed long after the close of discovery and after Defendant filed its motion for summary judgment, Plaintiff seeks to leave to amend his Complaint to (1) allege that Defendant's purported violation of the Family and Medical Leave Act ("FMLA'"), 29 U.S.C. § 2601, et seq. (Count I) was "willful" (proposed Amended Complaint, ¶23); and (2) to add a new claim that he was wrongfully discharged in violation of public policy, including but not limited to the FMLA (proposed Amended Complaint, Count VI and ¶¶ 45-46).[1] For the reasons stated below, Plaintiff's belated and prejudicial attempt to broaden the scope of his case by adding groundless and futile new allegations and claims should be denied.

**I. FACTUAL BACKGROUND**

The original five count Complaint in this case was filed in the Circuit Court for Baltimore County on December 13, 2002 and subsequently removed to this Court on federal question

---

[1] Plaintiff's proposed Amended Complaint is incorrectly captioned as a pleading in the Circuit Court for Baltimore County.

and diversity grounds. In its February 10, 2003 Answer, Quest included as two of its affirmative defenses the statements that: "Some or all of Plaintiff's claims are barred by the applicable statutes of limitations," and that: "Quest did not act with bad faith, evil motive, willfulness or malice toward Plaintiff." (Answer, Third Defense and Eleventh Defense.)

On February 11, 2003, this Court issued a scheduling order that, among other things, set March 27, 2003 as the deadline for filing amendments to the pleadings; June 25, 2003 as the end of discovery; and July 25, 2003 as the deadline for filing dispositive motions. On July 1, 2003, this Court entered an agreed Order extending discovery to August 26, 2003 for the purpose of Quest taking Plaintiff's deposition, and in connection with that extension also extended the time for filing dispositive motions until September 23, 2003.

Consistent with the Court's Order, Quest filed its Motion for Summary Judgment on September 23, 2003. Plaintiff filed his Response in Opposition on October 3, 2003. Only on October 6, 2003, over six months after the deadline for amendments to the pleadings; over three months after the main discovery cutoff and six weeks after the extended discovery cutoff for Plaintiff's deposition; and after Quest filed its Motion for Summary Judgment, did Plaintiff file his current Request to Amend Complaint.

## II.   THE STANDARD FOR A REQUEST FOR LEAVE TO AMEND A COMPLAINT

The standards for deciding whether to grant leave to amend a complaint are well established. As recently stated in <u>Curtis v. Pracht</u>, 202 F. Supp. 2d 406 (D. Md. 2002) (Chasanow, J.):

> A party may move to amend his complaint pursuant to Rule 15(a) and "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Under Rule 15(a), "[t]he decision to grant a party leave to amend its pleadings rests within the sound discretion of the district court." <u>Healthsouth Rehabilitation Hospital v.</u>

2

> American Red Cross, 101 F.3d 1005, 1010 (4th Cir. 1996), cert. denied, 520 U.S. 1264 (1997), citing Sandcrest Outpatient Serv. v. Cumberland County Hosp. Sys., 853 F.2d 1139, 1148 (4th Cir. 1988). The general and oft-cited rule is that leave sought should be freely given, "in the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. . . ." Foman v. Davis, 371 U.S. 178, 182 (1962).

202 F. Supp. 2d at 420. As discussed below, Plaintiff's proposed amendments should be denied due to undue delay, undue prejudice to Quest, and the futility of the proposed amendments.

### III. PLAINTIFF'S REQUEST TO AMEND THE COMPLAINT IS UNDULY DELAYED AND PREJUDICIAL TO QUEST

Plaintiff's request is grossly late. As noted above, the deadline for filing amendments to the pleadings was March 27, 2003, over six months before Plaintiff saw fit to seek to request to amend his complaint. He proffers no justification or explanation for this delay. In particular, Plaintiff does not contend that he learned of any new facts that for the first time made his amendments viable or necessary. To the contrary, he contends that "[t]here are no new facts." (Request at 1.) Furthermore, with respect to the addition of an allegation that the purported FMLA violation was "willful", he has known since Quest filed its Answer that it was contending both that his claim was barred by the statute of limitations and that its conduct was not willful. There is simply no justification for Plaintiff waiting to seek to amend his Complaint until six months later, after discovery was closed and after Quest had filed its Motion for Summary Judgment.[2]

Allowing Plaintiff to amend his Complaint at this late juncture would also cause further

---

[2] Plaintiff's untimely request to amend is consistent with his equally untimely service of discovery. See Quest's Opposition to Plaintiff's Motion to Compel Discovery, filed September 15, 2003.

delay in this case and prejudice Quest. Although Quest has already had an opportunity to take discovery on Plaintiff's claimed violation of the FMLA, to the extent that Plaintiff bases his proposed wrongful discharge claim on an alleged violation of some other law or public policy, discovery will be necessary to determine the basis for his claim and the law or public policy that he alleges was violated. Additional discovery, including a possible resumption of the Plaintiff's deposition, might then be necessary to explore the factual support for these claims. Quest would bear the cost of this additional discovery. This combination of undue delay, without justification or explanation, with prejudice to Quest is alone sufficient to warrant denying Plaintiff's request. See Healthsouth Rehabilitation Hospital v. American Red Cross, 101 F.3d 1005, 1010 (4th Cir. 1996), cert. denied, 520 U.S. 1264 (1997), citing Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987), cert. denied, 485 U.S. 977 (1988).

## IV.   PLAINTIFF'S PROPOSED AMENDMENTS WOULD BE FUTILE

Moreover, even assuming, solely for the purposes of argument, that Plaintiff's delay in seeking to amend the complaint and/or the prejudice to Quest are not alone sufficient to deny Plaintiff's request, his request still must be denied because the additional claims that he seeks to raise by his amendments are futile. See Curtis v. Pracht, 202 F. Supp. 2d at 420 (denying leave to amend because amendment would be futile).

Under Maryland law, a cause of action for abusive, or wrongful, discharge arises when the motivation for discharge violates a clear mandate of public policy. Adler v. American Standard Corp., 291 Md. 31, 47, 432 A.2d 464, 471 (1981). The "public policy in question must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to

make the public policy on the relevant topic not a matter of conjecture or interpretation." Porterfield v. Mascari II, Inc., 142 Md. App. 134, 140, 788 A.2d 242, 245 (2002) (citations omitted). Furthermore, the "complaint must plead with particularity the source of the public policy and the alleged violation." Id. (citations omitted).

In Makovi v. Sherwin-Williams Co., 316 Md. 603, 561 A.2d 179 (1989), the Maryland Court of Appeals made it clear that this tort is limited in nature. In particular, the Court held that the tort is "inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." Id. at 605, 561 A.2d at 180. Accordingly, the Court held that the tort was not available for a discharge that was alleged to be in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., or Md. Code (1957; 1998 Repl. Vol.) Art. 49B, both of which provided their own remedy. Id. at 626, 561 A.2d at 190. Subsequent decisions have continued to so limit the tort. See, e.g., Wethersby v. Kentucky Fried Chicken Nat'l Management Co., 86 Md. App. 533, 587 A.2d 569 (1991), rev'd on other grounds, 326 Md. 663, 607 A.2d 8 (1992) (no action based on public policy of statute prohibiting use of lie detector test as a condition of employment because statute provided exclusive remedy for its violation); Chappell v. Southern Md. Hosp. Inc., 320 Md. 483, 578 A.2d 766 (1990) (same, state and federal minimum wage acts); Miller v. Fairchild Indus. Inc., 97 Md. App. 324, 629 A.2d 1293, cert. denied, 333 Md. 172, 634 A.2d 46 (1993) (same, various environmental statutes and regulations). "Thus, if the relevant public policy is contained in a statute and the statute provides a remedy, the tort of wrongful discharge is not available." Porterfield, 142 Md. App. at 141, 788 A.2d at 245-46.

Plaintiff's proposed wrongful discharge action is barred by the principles of Makovi and its progeny. Most importantly, although paragraph 46 of his proposed Amended Complaint alleges generally that he "was wrongfully discharged in violation of state and federal law and public policy," the only law or public policy that he identifies is the FMLA. The FMLA, of course, contains a remedy for its violation: the very cause of action that Plaintiff already has alleged in Count I. See 29 U.S.C. ¶ 2617. Thus, under Makovi, Plaintiff cannot bring a separate wrongful discharge action for violation of the FMLA or the policies of that law and such an amendment would be futile.

Furthermore, Plaintiff cannot rely on any other law or public policy. As noted above, the "complaint must plead with particularity the source of the public policy…." Porterfield, 142 Md. App. at 140, 789 A.2d at 245 (2002) (citations omitted). Merely making a vague and generalized reference to "state and federal law and public policy" does not fulfill this requirement. Moreover, in his separate Memorandum in Support of Plaintiff's Response to Motion for Summary Judgment (filed October 3, 2003), Plaintiff has conceded that this case "is about whether Defendant violated FMLA." (Response at 5.) Accordingly, by his own admission there is no other law or public policy that he claims was violated.[3] Thus, such an amendment also would be futile.

Similarly, for the reasons already stated in Quest's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Memorandum at 18-19) and its Reply in support thereof (Reply at 6-7), Plaintiff's proposed allegation that his termination was "in willful violation

---

[3] To the extent that Plaintiff may attempt to assert that he should be provided the opportunity after discovery to assert violations of other laws or public policy, he would only further demonstrate the inappropriateness of allowing the amendment now, after discovery is completed, as this would require a reopening of discovery.

of the FMLA" (proposed Amended Complaint, ¶ 23) also would be futile. It is undisputed that the employees of Quest's Human Resources department, who made the decision not to allow him to return to work until he had a full release, did so in reliance on information that Director of Human Resources Lynn Neidenbach received from Warehouse Manager Larry Bauernshub that he could not accommodate Plaintiff's restriction. There is no evidence whatsoever that they did this in anything but good faith. Even assuming, for the purposes of argument, that they were wrong, there is nothing to show they knew it was wrong or that they showed reckless disregard for the matter in light of the statute. Indeed, in his Response Plaintiff was unable to offer any such evidence, relying instead on mere assertions that the alleged FMLA violation was willful and that "Defendant basically lied in contending that lifting over 30 pounds was an essential of Plaintiff's job and that no accommodation could be made." As shown in the Reply, however, if anyone "basically lied" (which Quest denies), it was not "Defendant," but rather the deceased Mr. Bauernshub; the actual decision makers relied in good faith on what he told Ms. Neidenbach. (Reply at 6-7; see also Memorandum at 18-19.) Thus, Plaintiff cannot establish a willful violation and an amendment to allege willfulness would be futile.

## V.    CONCLUSION

For the reasons stated above, Plaintiff's Request for Leave to Amend the Complaint was unduly delayed and is prejudicial to Quest. Moreover, his proposed amendments would be futile. Accordingly, his Request should be denied.

WHEREFORE, Quest respectfully requests that Plaintiff's Request for Leave to Amend the Complaint be denied.

Respectfully submitted,

\_\_\_\_\_/s/_____
Frank C. Morris, Jr., Esq.
Bar No. 05157
Brian Steinbach, Esq.
Bar No. 024849
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
(202) 861-0900

Attorneys for Defendant
Quest Diagnostics Incorporated

Dated: October 17, 2003

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 17, 2003, a copy of Defendant's Opposition to Plaintiff's Request for Leave to Amend Complaint, was electronically filed and served on the following:

>J. Scott Morse, Esq.
>Law Office of J. Scott Morse, LLC
>334 St. Paul Place
>Baltimore, MD 21202
>
>Attorneys for Plaintiff

>_____/s/_____
>Brian Steinbach, Esq.
>Bar No. 024849
>EPSTEIN BECKER & GREEN, P.C.
>1227 25th Street, N.W., Suite 700
>Washington, D.C. 20037
>(202) 861-0900
>Fax: (202) 296-2882