IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **ANTHONY PASSAUER,**<br><br>　　　　　**Plaintiff,**<br><br>　　v.<br><br>**QUEST DIAGNOSTICS INCORPORATED,**<br><br>　　　　　**Defendant.** | Civil No.: CCB 03-CV-159 |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant Quest Diagnostics Incorporated presents this Notice of Supplemental Authority in support of its Motion for Summary Judgment, presently scheduled for hearing on April 16, 2004.

Defendants ask this Court to take notice of the recent decision of the United States Court of Appeals for the First Circuit in Hillstrom v. Best Western TLC Hotel, 354 F.3d 27 (1st Cir. 2003), a copy of which is attached as Exhibit A. This decision is pertinent to the issue in the present case of whether Plaintiff's FMLA claim is barred by the statute of limitations because he cannot show that the alleged FMLA violation was "willful." The First Circuit specifically addressed the question of what constitutes a "willful" violation of the FMLA:

> We hold that in order to establish a willful violation of the FMLA, a plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (interpreting a parallel distinction between willful and negligent violations in the FLSA statute of limitations). As the Supreme Court explained in McLaughlin:
>
>> If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful.... If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then ... it should not be ... considered [willful.]

<u>Id.</u> at 135 n. 13, 108 S.Ct. 1677.

354 F.3d at 33. The First Circuit further noted that other circuits have adopted this definition of willfulness when interpreting the FMLA, albeit in unpublished opinions that it cited. 354 F.3d at 34 and n. 5. Defendant notes that this holding is also consistent with the District of Maryland and other authority cited in the Memorandum of Law In Support of Defendant's Motion for Summary Judgment at 17.

                                        Respectfully submitted,

                                        _____/s/_____
                                        Frank C. Morris, Jr., Esq.
                                        Bar No. 05157
                                        Brian Steinbach, Esq.
                                        Bar No. 024849
                                        EPSTEIN BECKER & GREEN, P.C.
                                        1227 25th Street, N.W., Suite 700
                                        Washington, D.C. 20037
                                        (202) 861-0900

                                        Attorneys for Defendant
                                        Quest Diagnostics Incorporated

Dated: April 15, 2004

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 15, 2004, a copy of Defendant's Notice of Supplemental Authority, with Exhibit A attached thereto, was electronically filed and served on the following:

> J. Scott Morse, Esq.
> Law Office of J. Scott Morse, LLC
> 334 St. Paul Place
> Baltimore, MD 21202
>
> Attorneys for Plaintiff

> _____/s/_____
> Brian Steinbach, Esq.
> Bar No. 024849
> EPSTEIN BECKER & GREEN, P.C.
> 1227 25th Street, N.W., Suite 700
> Washington, D.C. 20037
> (202) 861-0900
> Fax: (202) 296-2882

**EXHIBIT A**

Westlaw.

354 F.3d 27 Page 1
84 Empl. Prac. Dec. P 41,564, 149 Lab.Cas. P 34,793, 9 Wage & Hour Cas.2d (BNA) 331, 27 NDLR P 114
**(Cite as: 354 F.3d 27)**

United States Court of Appeals,
First Circuit.

Roy HILLSTROM, Plaintiff, Appellant,
v.
BEST WESTERN TLC HOTEL, Defendant,
Appellee.

**No. 03-1972.**

Heard Dec. 1, 2003.
Decided Dec. 31, 2003.

**Background:** Former employee sued former employer, alleging that former employer unlawfully terminated him because of age and gender and violated job protection guarantees of the Family and Medical Leave Act (FMLA). The United States District Court for the District of Massachusetts, Richard G. Stearns, J., 265 F.Supp.2d 117, granted former employer's motion for summary judgment. Former employee appealed.

**Holdings:** The Court of Appeals, Lynch, Circuit Judge, held that:
(1) employer's proffered nondiscriminatory reason for terminating employee was not pretextual, and
(2) as matter of first impression, employee must show that employer either knew or showed **reckless disregard** for the matter of whether its conduct was prohibited by **FMLA**, in order to establish willful violation of **FMLA**.

Affirmed.

West Headnotes

**[1] Civil Rights 1137**
78k1137 Most Cited Cases

**[1] Civil Rights 1209**
78k1209 Most Cited Cases

Even in mixed-motive cases under the ADEA and Title VII, plaintiffs must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[2] Civil Rights 1171**
78k1171 Most Cited Cases

**[2] Civil Rights 1209**
78k1209 Most Cited Cases

Employer's proffered reason for terminating hotel employee, i.e., that he failed to meet manager's expectations, was not pretext for age or gender discrimination, where manager's expectations were not unreasonable, employee admitted he failed to meet some of them, and, although employee's statistics indicated that most workers terminated by manager were over 40 and male, employee failed to provide evidence of characteristics of universe of workers supervised by manager. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[3] Civil Rights 1542**
78k1542 Most Cited Cases

Valid statistical evidence may play a helpful role even in disparate treatment cases under the ADEA and Title VII, but only if it tends to prove the discriminatory intent of the decision makers involved. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[4] Federal Civil Procedure 2545**
170Ak2545 Most Cited Cases

Hearsay from coemployees that, in their view, hotel manager terminated older employees to give work to younger employees, and that he preferred to hire younger employees, was inadmissible, and thus could not be considered in summary judgment analysis in ADEA case. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[5] Civil Rights 1501**
78k1501 Most Cited Cases

354 F.3d 27                                                                                              Page 2
84 Empl. Prac. Dec. P 41,564, 149 Lab.Cas. P 34,793, 9 Wage & Hour Cas.2d (BNA) 331, 27 NDLR P 114
**(Cite as: 354 F.3d 27)**

To establish a "willful" violation of the FMLA, increasing the limitations period from two to three years, a plaintiff must show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. Family and Medical Leave Act of 1993, § 107(c)(2), 29 U.S.C.A. § 2617(c)(2).

**[6] Civil Rights 🗝1501**
78k1501 Most Cited Cases

If an employer acts reasonably in determining its legal obligation, its action cannot be deemed "willful" under the FMLA, so as to lengthen the limitations period from two to three years, and if an employer acts unreasonably, but not recklessly, in determining its legal obligation, then it should not be considered willful. Family and Medical Leave Act of 1993, § 107(c)(2), 29 U.S.C.A. § 2617(c)(2).

**[7] Civil Rights 🗝1501**
78k1501 Most Cited Cases

It is presumed that when Congress enacted the FMLA provision increasing the limitations period to three years if the violation was "willful," it knew the definition that the Supreme Court had given to that term as used in the FLSA. Portal-to-Portal Act of 1947, § 6(a), 29 U.S.C.A. § 255(a); Family and Medical Leave Act, § 107(c)(2), 42 U.S.C.A. § 2617(c)(2).

  *28 William J. McLeod, with whom Robert S. Messinger and Cutler McLeod PC were on brief, for appellant.

 Guy P. Tully, with whom Richard W. Paterniti and Jackson Lewis LLP were on brief, for appellee.


 Before LYNCH, Circuit Judge, STAHL, Senior Circuit Judge, and LIPEZ, Circuit Judge.


 LYNCH, Circuit Judge.

 Roy Hillstrom, then age 42, was terminated from his job at the Best Western TLC Hotel in Waltham, Massachusetts in April 2000. His boss, Matthew Phipps, said it was for poor job performance. Hillstrom sued, alleging he had been discriminated against because of his age and gender. He also claimed that Best Western violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., by changing his employment position when he returned in the first week of March 1999 from a medical leave due to an aneurysm. The district court entered summary judgment for Best Western on all claims. We affirm. In doing so, we decide an issue of first impression in this circuit: the standard for determining whether a violation is "willful" for purposes of the FMLA three- year statute of limitations.

**I.**

 We recite the facts in the light most favorable to plaintiff, the non-moving party, on our review of summary judgment. No material facts are in dispute; the question is rather the range of permissible inferences.

 Roy Hillstrom was hired as a night manager in 1981 by the Best Western TLC hotel in Waltham, Massachusetts. In 1988 he was promoted to day manager of the hotel, as well as the affiliated East Hotel. In that position, Hillstrom reported directly to the president of the company, Anthony LaCava, Sr., and oversaw housekeeping, maintenance, reservations, and front desk operations. Two years later, Hillstrom was promoted to general manager of the Rooms Division of the Waltham Best Western TLC and assigned responsibility for the Rooms Division and its employees.

 In 1994 the East Hotel was sold; Hillstrom retained his job title but his duties *29 were limited to the one hotel in Waltham. Later that year, Anthony LaCava, Jr. became president of the company after the death of his father. Hillstrom then reported to him.

 Hillstrom's title, general manager of the Rooms Division, was apt; operations in the Waltham hotel were split between that division and the Food and Beverage Division. Responsibility for food and beverages at the Best Western TLC in Waltham had been outsourced to another company, Norben, Inc. In at least one other hotel owned by the LaCava family, the Marlborough Royal Plaza, the Food and Beverages Division was not outsourced. Matthew Phipps, roughly the same age as Hillstrom, was the manager of that division at the Marlborough hotel.

 The ambitious Phipps approached LaCava in September or October of 1998 with plans to "grow" the business, which included Phipps's becoming general manager for the entire Waltham Best Western TLC Hotel. LaCava declined at that point; the Waltham hotel was then in costly renovations and

354 F.3d 27                                                                                                                          Page 3
84 Empl. Prac. Dec. P 41,564, 149 Lab.Cas. P 34,793, 9 Wage & Hour Cas.2d (BNA) 331, 27 NDLR P 114
**(Cite as: 354 F.3d 27)**

money was not available for more personnel, although LaCava hoped ultimately to manage the food and beverages business in Waltham without outsourcing.

Several months later, in January 1999, Hillstrom suffered an aneurysm and consequently left work on FMLA leave for about six weeks. In February 1999, while Hillstrom was on leave, LaCava changed his mind about Phipps's proposal. He promoted Phipps to general manager of the Waltham hotel. LaCava later testified that Phipps's promotion was part of a larger strategy to consolidate management at the Best Western and have fewer people directly reporting to him. He explained that he had already assigned general managers for each of the other properties he owned and that he had been advised in February that he could afford a general manager for the Waltham hotel because the renovation work was concluding. As to why Phipps and not Hillstrom got the promotion to general manager, LaCava said that, while he was satisfied with Hillstrom's performance as general manager of the Rooms Division, he wanted the hotel to be led by someone like Phipps who had a background in food and beverage services. Experience in that area was particularly important for the Best Western because it was about to start providing those services internally for the first time. And LaCava, whose office was located at the Marlborough hotel, spent little time overseeing operations at the Waltham hotel.

When Hillstrom returned to work in March 1999, he found that his job had changed: he no longer reported directly to upper management, but instead reported to Phipps. Phipps had moved himself into Hillstrom's office and removed Hillstrom's belongings. Hillstrom was relegated to a smaller office and his title was changed to "Rooms Division Manager," though his responsibilities initially remained the same. His pay and benefits were the same. Gradually, tension developed between Phipps and Hillstrom, and Phipps became critical of Hillstrom's failure to enforce and implement new hotel procedures that Phipps had established. Hillstrom acknowledges that Phipps expressed dissatisfaction to him about his failure to implement these procedures at least twice orally.

A later critical memorandum, dated March 27, 2000, was even more pointed, telling Hillstrom that he was on a thirty-day probationary period. Phipps specifically faulted Hillstrom for failing to: (1) use consistently the computer management system that displayed all designated room types and room rates;

(2) provide **\*30** Phipps with requested backup documentation for items listed in the computer system; (3) consult with Phipps about changes in the status of various room packages and discounted specials prior to making the changes/adjustments; (4) provide Phipps with daily central reservation office reports; (5) provide Phipps with completed "call around sheets" identifying the rates of local competitor hotels; (6) arrange for all staff to be in proper uniforms; (7) make certain that check-in staff used the guest's name at least three times; and (8) make sure that registration cards were completely filled out. In his deposition, Hillstrom conceded the accuracy of some, but by no means all, of Phipps's criticisms.

A few days later, Hillstrom contacted the human resources manager, Denise Blaise, to complain. He said that he had been "unfairly judged" and that most of the issues Phipps had raised in the memo had not previously been brought to his attention. [FN1]

> FN1. The record does not describe Blaise's response to Hillstrom's complaint, as most of Blaise's deposition is not in the record.

Thirty days after the March 27 memo, Phipps terminated Hillstrom's employment. At the time, Hillstrom was age 42 and Phipps was age 40. Hillstrom's job was then performed in part by a new employee, Eva Auranen, who was younger and female. Auranen had been hired two weeks before Hillstrom's termination.

In his suit, Hillstrom alleged that he was discriminated against on the basis of his gender and age in violation of the ADEA, Title VII, and Mass. Gen. L. ch. 151B § 1 *et seq*. He also claimed that his rights under the Family and Medical Leave Act were violated because, inter alia, he was demoted upon his return to work. [FN2]

> FN2. Hillstrom also claimed that Best Western TLC violated its contractual obligations, arising from its employee handbook, in not following the proper procedures when it fired him. There is no appeal on that point.

II.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

354 F.3d 27 Page 4
84 Empl. Prac. Dec. P 41,564, 149 Lab.Cas. P 34,793, 9 Wage & Hour Cas.2d (BNA) 331, 27 NDLR P 114
**(Cite as: 354 F.3d 27)**

The district court awarded summary judgment to Best Western on each of Hillstrom's claims. On the discrimination claim, the court concluded that there was no "direct evidence" of discrimination and applied the burden-shifting framework of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It determined that Hillstrom failed to make out a prima facie case of discrimination because he did not demonstrate that he performed adequately on the job. In particular, the court noted that Hillstrom never disputed the allegation that he failed to comply with the procedures implemented by Phipps. The district court also granted summary judgment for Best Western on the FMLA claim, noting that Hillstrom received the same pay and benefits and had essentially the same duties when he returned from sick leave as he had prior to his aneurysm. Although the court acknowledged that some elements of his job did change, it determined that any change was insufficient to justify a finder of fact in concluding there was an FMLA violation.

### III.

Review of the district court's entry of summary judgment is de novo. *Lennon v. Rubin,* 166 F.3d 6, 8 (1st Cir.1999).

On appeal, Hillstrom argues that the district court's approach was incorrect in light of a subsequent Supreme Court case, *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Hillstrom correctly points out that the district **\*31** court followed the law in this circuit at that time: the rule that usually the availability of a mixed-motive analysis depended on the plaintiff's producing "direct evidence" of discrimination. *Desert Palace* overruled that rule. *See id.* at 2153-55; *Estades-Negroni v. Assocs. Corp.,* 345 F.3d 25, 30 (1st Cir.2003). Hillstrom argues that this repudiation of the direct evidence requirement in mixed-motive cases is inconsistent with the district court's application of the *McDonnell Douglas* burden-shifting framework.

Hillstrom also argues that there is a genuine issue of material fact as to whether gender or age was a motivating factor in his termination, and that the district court did not give due weight to Phipps's reputation for hiring younger females. Additionally, Hillstrom argues that the district court's determination that he did not establish a prima facie case of discrimination under the *McDonnell Douglas* framework was incorrect. He argues that he presented sufficient evidence that Phipps's concerns about his job performance were illegitimate and therefore were insufficient to overcome the minimal requirements of a prima facie case.

Finally, Hillstrom argues that Best Western was not entitled to summary judgment on the FMLA claim because his job, in fact, substantially changed when he returned from medical leave.

### A. Discrimination Claims

[1] We place to one side Hillstrom's contentions regarding the interaction between *Desert Palace* and *McDonnell Douglas.* [FN3] It is doubtful that Hillstrom has preserved this issue, as he never suggested to the district court that he was presenting a mixed-motive case. Further, even assuming the issue were preserved, it would make no difference here: even in mixed-motive cases, plaintiffs must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias. Hillstrom's evidence does not meet that test.

> FN3. We do note that in *Raytheon Co. v. Hernandez,* --- U.S. ----, 124 S.Ct. 513, 518, 157 L.Ed.2d 357 (2003), the Supreme Court used the *McDonnell Douglas* framework without commentary in a post-*Desert Palace* case.

We also put aside the question whether Hillstrom established a prima facie case. We turn, instead, to whether there is evidence that, notwithstanding the employer's stated reasons for the termination, the real reason, at least in part, was age and gender discrimination. We have used this technique before, and do so again here. *See Rivera-Aponte v. Rest. Metropol # 3, Inc.,* 338 F.3d 9, 11 (1st Cir.2003); *Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 33 (1st Cir.2001).

[2] Hillstrom's pretext argument relies on two themes. The initial theme is that while he failed to meet some of the performance standards set out by Phipps, those standards were not legitimate. That illegitimacy, he says, establishes that Best Western's explanation for firing him was pretext and that a real reason was discrimination. The second theme is that Phipps imposed these illegitimate expectations because he preferred younger females (and not older males) to work for him. This, Hillstrom says, shows

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

354 F.3d 27 Page 5
84 Empl. Prac. Dec. P 41,564, 149 Lab.Cas. P 34,793, 9 Wage & Hour Cas.2d (BNA) 331, 27 NDLR P 114
**(Cite as: 354 F.3d 27)**

causation based on impermissible bias. Hillstrom purports to show this bias by what he terms "statistical evidence," Phipps's reputation, and the fact that two weeks into Hillstom's one-month probationary period, Phipps hired a young woman, Eva Auranen, who took over at least part of Hillstrom's job when he was terminated.

**\*32** There is no evidence that any of Best Western's job expectations were illegitimate. To the contrary, they were quite reasonable on their face. That Hillstrom disagreed with their wisdom does not make them illegitimate. Nor is there any evidence that Hillstrom was singled out for higher expectations. There is evidence that all employees were expected to meet the new standards and that many, like Hillstrom, did not like the standards. Hillstrom stated that all employees save one were dissatisfied with Phipps's management style. But the hotel prospered under Phipps; its revenues increased from $2.7 million to $4 million in the year and a half following his promotion to general manager.

It is possible, in theory, for seemingly reasonable expectations to be unreasonable in application. But the record shows that the goals set by Phipps were not impossible to meet; rather, it suggests that Hillstrom thought them silly or just wrong and so did not comply. Indeed, Hillstrom admitted that he failed to meet several of the expectations Phipps set for him, including failing to provide Phipps with "call around sheets," failing to ensure that all staff wore proper uniforms, failing uniformly to enforce the guest greeting by employees at the front desk, and failing properly to include the special requests of guests in the reservation system. Hillstrom has not presented evidence of disparate treatment sufficient to get to a jury. He received progressive warnings that his performance was deficient and there is no evidence that any other employees were treated better or exempted from Phipps's new managerial expectations.

[3] The second theme does not save Hillstrom from summary judgment. As the district court noted, the "statistical evidence" on which Hillstrom relied yielded no useful information. Valid statistical evidence may play a helpful role even in disparate treatment cases, but only if it tends to prove the discriminatory intent of the decision makers involved. That often will be difficult. *See* LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 (1st Cir.1993). Hillstrom's evidence had the right focus: Phipps. He offered evidence that roughly 75% of all individuals terminated by Phipps were over 40 and that 87% of those terminated were male (as the trial court understood the table, the rates were actually 42% and 75%, respectively). But absent evidence of the characteristics of the universe of employees supervised by Phipps, those figures are not probative.

[4] Hillstrom also relies on inadmissible hearsay from other employees that, in their view, Phipps terminated older employees to give work to younger employees, and that he preferred to hire younger employees. This evidence was not admissible and could not be considered in the summary judgment analysis.

B. FMLA Claim

Hillstrom argues that Best Western violated its obligations under the FMLA because it did not restore him to the same or an equivalent position on his return from medical leave. *See* 29 U.S.C. § 2614(a)(1). The district court, on the merits, ruled that the job to which Hillstrom returned was substantially similar. We do not reach that issue because we find that Hillstrom's FMLA claim is time-barred.

Hillstrom returned from medical leave in March 1999 and instituted this action in April 2001. The district court held that this claim was not barred by the FMLA's two-year statute of limitations because it interpreted Hillstrom's claim to include a second argument under the FMLA: that he was ultimately fired in April 2000 in retaliation for his taking medical leave under the FMLA approximately a year earlier.**\*33** [ FN4] *See* 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees ... who have used FMLA leave."). Because the FMLA's two-year statute of limitations begins to run only "after the date of the last event constituting the alleged violation for which the action [under the FMLA] is brought," the district court held that this second FMLA argument, premised on actions occurring only a year before the suit was filed, rendered Hillstrom's FMLA claim timely.

> FN4. Best Western objected to the district court's interpretation of Hillstrom's FMLA claim, arguing that Hillstrom had not given fair warning of the theory that his ultimate termination violated the FMLA in addition to Title VII. The district court acknowledged that there was "some merit" to this complaint, but assumed, without deciding the issue, that the defendant had been given

354 F.3d 27                                                                                                           Page 6
84 Empl. Prac. Dec. P 41,564, 149 Lab.Cas. P 34,793, 9 Wage & Hour Cas.2d (BNA) 331, 27 NDLR P 114
**(Cite as: 354 F.3d 27)**

sufficient notice of the argument.

On appeal, Hillstrom chooses not to rely on the district court's limitations period reasoning; he makes no claim that his ultimate termination from Best Western constituted retaliation. Instead, he presses the FMLA claim based solely on Best Western's alleged failure to restore him to a substantially similar position upon his return from medical leave. On its face, that retaliation claim accrued more than two years before Hillstrom filed suit.

Hillstrom argues that his FMLA claim is nonetheless timely because Best Western's failure to return him to his original position was a "willful" violation of the FMLA. In the case of such willful violations, the FMLA limitations period is increased from two years to three. See 29 U.S.C. § 2617(c)(2). Hillstrom argues that the alleged FMLA violation here was willful because Best Western's failure to restore him to his original position was done "either as a result of [his] taking leave or in retaliation for his taking leave."

[5][6] Hillstrom's argument mistakes the meaning of willfulness. We hold that in order to establish a willful violation of the **FMLA,** a plaintiff must show that "the employer either knew or showed **reckless disregard** for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (interpreting a parallel distinction between willful and negligent violations in the FLSA statute of limitations). As the Supreme Court explained in McLaughlin:

If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful.... If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then ... it should not be ... considered [willful.]

Id. at 135 n. 13, 108 S.Ct. 1677. In crafting this understanding of the term willful, the Court expressly rejected two other tests for determining willfulness: the Jiffy June test that asked only whether the employer knew the Act "was in the picture," Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1142 (5th Cir.1972), and another test that asked if the employer acted unreasonably in believing it was complying with the statute. McLaughlin, 486 U.S. at 134, 108 S.Ct. 1677.

[7] There is every reason to apply this FLSA standard for willfulness to FMLA claims. McLaughlin, a 1988 decision, predated the 1993 enactment of the FMLA. The statutes use the term "willful" in similar ways and in identical contexts: both provide for a two-year statute of limitations except in cases of willful violations, when a three-year limitations period applies. Compare 29 U.S.C. § 2617(c)(2), with id. § 255(a). When enacting the FMLA, Congress is presumed to have **\*34** known the definition that the Supreme Court had given to the term "willful." See Am. Nat'l Red Cross v. S.G., 505 U.S. 247, 252, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992). Since McLaughlin, the Supreme Court has used this definition of "willful" in another analogous context. In Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Court applied the definition of "willful" enunciated in McLaughlin to a provision of the ADEA that provides for liquidated damages in the case of willful violations. See id. at 614-17, 113 S.Ct. 1701. The Court reaffirmed that "[t]he word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent." Id. at 615, 113 S.Ct. 1701 (quoting McLaughlin, 486 U.S. at 133, 108 S.Ct. 1677).

The McLaughlin definition of willfulness is also the definition that other circuits have adopted when interpreting the FMLA, albeit in unpublished opinions. [FN5]

> FN5. Williams v. N.W. Airlines, 53 Fed.Appx. 350 (6th Cir.2002) (unpublished opinion); Packard v. Cont'l Airlines, Inc., 24 Fed.Appx. 960 (10th Cir.2001) (unpublished opinion); Settle v. S.W. Rodgers Co., 182 F.3d 909, 1999 WL 486643 (4th Cir. July 12, 1999) (unpublished opinion).

Even assuming, without deciding, that there is sufficient evidence that Best Western decided to alter slightly Hillstrom's employment conditions because he took medical leave under the FMLA, there is no evidence that this constituted a "willful" violation of the statute and thus no genuine question of material fact on the issue.

**IV.**

The grant of summary judgment for the defendant is affirmed. Costs are awarded to Best Western TLC

354 F.3d 27    Page 7
84 Empl. Prac. Dec. P 41,564, 149 Lab.Cas. P 34,793, 9 Wage & Hour Cas.2d (BNA) 331, 27 NDLR P 114
**(Cite as: 354 F.3d 27)**

Hotel.

354 F.3d 27, 84 Empl. Prac. Dec. P 41,564, 149 Lab.Cas. P 34,793, 9 Wage & Hour Cas.2d (BNA) 331, 27 NDLR P 114

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works