IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY PASSAUER

v.  :  CIVIL NO. CCB-03-159

QUEST DIAGNOSTICS, INC.

...o0o...

MEMORANDUM

Plaintiff Anthony Passauer has brought this action against Defendant Quest Diagnostics, Inc. ("Quest"), for violation of the Family and Medical Leave Act ("FMLA"), negligent misrepresentation, promissory estoppel, breach of contract, and fraud, arising from the termination of plaintiff's employment following a medical leave of absence under the FMLA. Now pending before the Court is Defendant Quest's motion for summary judgment. For the reasons stated below, the motion will be granted.

I.

Plaintiff Anthony Passauer was employed by SmithKline Beecham Clinical Laboratories ("SmithKline") as a warehouse coordinator. In August 1999, Defendant Quest Diagnostics, Inc., acquired the operations of SmithKline, including the warehouse in Owings Mills, Maryland, where Passauer worked. The Owings Mills warehouse closed during the first quarter of 2000, and most of the employees transferred to Quest's warehouse on Caton Avenue in Arbutus, Maryland.

Due to a shoulder injury which required surgery and recovery time, Passauer requested a leave

of absence from his job in December 1999. In a letter dated January 17, 2000, Quest informed Passauer that it had designated the requested absence as leave under the FMLA and that his leave would start on January 18, 2000. Plaintiff's maximum leave entitlement was twelve weeks within a twelve-month period, and plaintiff would be required to present a fitness-for-duty certificate from his doctor prior to being restored to employment. The letter further explained that "if the fitness-for-duty certification sets out any restrictions on your ability to perform the essential functions of your job, the Company will consider it a request for temporary accomodation and will work with you in an effort to accomodate you. Where your restrictions cannot be accomodated, the Company will consider other options, including requiring you to take additional leave or another open position."

On April 5, 2000, Passauer presented to Quest's Human Resources Department a fitness-for-duty certificate from his doctor, stating that he could return to work on April 10, 2000, the last day of his maximum twelve weeks of leave. The certificate restricted plaintiff from lifting over thirty pounds until May 1, 2000.

Marilyn Martin, the Quest Human Resources Generalist who received the certificate conferred with Director of Human Resources Lynn Neidenbach about Passauer's ability to return to work. Neidenbach subsequently spoke to Warehouse Manager Larry Bauernshub about whether Passauer's work restriction could be accomodated in the warehouse. According to Neidenbach, Bauernshub told her that all of the jobs at the Caton Avenue warehouse, including those of work leaders, supervisors, and managers, required lifting more than thirty pounds. Bauernshub told Neidenbach that, as such, he did not have any jobs in the warehouse that could accomodate Passauer's lifting restriction.

Martin called Passauer at home later that day to inform him of the company's decision. She left

a message on his answering machine indicating that no accomodation was available at the warehouse and stating: "Until you can come back at full duty and be able to work with no restrictions we cannot have you return to work." Dep. Ex. 9. On April 19, 2000, Quest sent Passauer a letter notifying him that his FMLA leave had expired on April 11, 2000, and that he no longer had any job restoration rights under the FMLA.

Plaintiff went to the Caton Avenue warehouse and attempted to return to work on May 8, 2000. Bauernshub told him, and Martin confirmed, that neither his former job nor any equivalent job was available for him. Martin then suggested that Passauer could apply for a possible position as "supervisor of logistics;" however, at the time, Martin did not realize that the posting period for the position had already expired. Two days later, the position was offered to a candidate already interviewed. Martin informed Passauer that the position had been filled and that his employment was therefore terminated.

Plaintiff has brought suit for violation of the FMLA in addition to claims for negligent misrepresentation, promissory estoppel, breach of contract, and fraud arising from his termination.

II.

Quest has moved for summary judgment. Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a

verdict for the non-moving party." *Id.*

A.

Passauer's FMLA claim is time-barred under the FMLA statute of limitations. Claims for violations of the FMLA must generally be brought within two years of the date of the last event constituting the alleged violation. 29 U.S.C. §2617(c)(1). The limitations period is extended to three years, however, for willful violations. *Id*. at §2617(c)(2). To establish a willful violation, a plaintiff must show that "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

Plaintiff has proffered no evidence of a willful violation sufficient to create a genuine issue of material fact.[1] He has not shown that Quest knew its conduct to be wrong or that Quest showed reckless disregard for the matter in light of the statute. Passauer simply makes the bald allegation that "Defendant basically lied in contending that lifting over 30 pounds was an essential function of Plaintiff's job, and that no accomodation could be made." Pl.'s Response to Mot. for Sum. Judgment, at 5.

Neidenbach investigated whether the warehouse could accomodate Passauer's work restriction. She conferred with Bauernshub as to whether such an accomodation would be possible and whether any position existed in the warehouse for which Passauer qualified in light of his lifting

---

[1]Because the court does not find that plaintiff has alleged facts sufficient to support a claim for willful violation of the FMLA, plaintiff's request for leave to amend the complaint to insert the word "willful" will be denied.

restriction. Based on her own knowledge of the warehouse and her conversation with Bauernshub, she confirmed that no such position was available and instructed Martin to so inform Passauer. Neidenbach Decl., ¶2-3. Nothing in Passauer's pleadings shows that Neidenbach's inquiry was done in bad faith or that she was acting under false pretenses in denying that the warehouse could accomodate Passauer's work restriction. Because he has presented no evidence of intentional or reckless misconduct by Quest, plaintiff's claim does not fall within the three-year statutory period for willful violations of the FMLA.[2]

Even if not time-barred, Passauer's allegations are insufficient to establish a violation of the FMLA. The FMLA regulations provide: "If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." 29 CFR §825.214. Passauer alleges that lifting over thirty pounds was not an essential function of his job.

Passauer had no first-hand knowledge of the work duties at the warehouse on Caton Avenue

---

[2]Plaintiff argues that, alternatively, the two-year statute of limitations should be equitably tolled because he was never advised of the two-year limitations period by his previous counsel, and he did not engage new counsel until two years after the alleged violation took place. The Fourth Circuit has recognized that "[e]quitable tolling has been allowed 'in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass'...We have also recognized that equitable tolling is appropriate when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Chao v. Virginia Dept. of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (citations omitted). None of these narrow exceptions applies in the instant case. To the contrary, plaintiff engaged the assistance of counsel to assert his rights against Quest within months of his termination, and even had in his possession a draft complaint prepared by his original counsel. Plaintiff knew of a possible claim and could have filed the initial draft complaint within the two-year statutory period. Accordingly, plaintiff may not now claim that he is entitled to an equitable tolling of the statute of limitations.

and does not counter the declaration of Neidenbach with proof that disputes the lifting responsibilities at that warehouse. Thus, Passauer has failed to show that lifting thirty pounds was not an essential function of his position as it operated at Quest's Caton Avenue warehouse; nor has he shown that the warehouse could have accomodated his work restriction at the time he attempted to return to work.[3] Because Passauer was unable to perform an essential function of the positions available at the Caton Avenue warehouse, Quest properly declined to restore him to work after the expiration of his twelve-week FMLA leave.

B.

Plaintiff further argues that Quest is liable for negligent misrepresentation.[4] However, Passauer's allegations fail to establish this claim. "The elements of the tort of negligent misrepresentation under Maryland law are:

1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

---

[3] The FMLA does not require that the employer accomodate any restrictions or limitations an employee might have following medical leave. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 384 (3rd Cir. 2002); *Tardie v. Rehabilitation Hospital*, 168 F.3d 538, 544 (1st Cir. 1999).

[4] Defendant argues that plaintiff's common law claims of negligent misrepresentation, promissory estoppel, breach of contract, and fraud are preempted by ERISA because plaintiff seeks to recover lost severance pay under each of these claims. Although Quest's severance plan is an ERISA plan, plaintiff's claims do not substantively relate to the severance plan so as to subject them to preemption. *See Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001) (state actions that affect employee benefit plans in too tenuous, remote, or peripheral a manner do not "relate to" the plan). A state law claim is preempted by ERISA when it directly conflicts with an ERISA cause of action or when it is "premised on" the existence of an employee benefit plan so that "in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists." *Id.* (citation omitted). Passauer essentially seeks to recover lost backpay resulting from an alleged FMLA violation. His claims are not premised on the existence of the severance plan and do not challenge the administration of the plan, but merely include severance pay as an element of possible damages.

    2) the defendant intends that his statement will be acted on by the plaintiff;
    3) the defendant has knowledge that the plaintiff will probably rely on the statement which, if erroneous, will cause loss or injury;
    4) the plaintiff, justifiably, takes action in reliance on the statement; and
    5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Foster v. American Home Products Corp.*, 29 F.3d 165, 171 (4th Cir. 1994) (quoting *Martens Chevrolet v. Seney,* 292 Md. 328, 337, 439 A.2d 534, 539 (1982).

    Plaintiff argues that numerous statements in the January 17, 2000 letter were false or misleading, including statements that the company would "work with him in an effort to accomodate him," "treat him in a fair and consistent matter," provide him the "same or an equivalent job" after his FMLA leave, and "consider other options, including requiring you to take additional leave or another open position" if he were to return to work with restrictions. Pl.'s Resp. to Mot. for Sum. Judgment, at 6-7. Passauer does not show how any of these statements were false. Quest did not promise reinstatement but merely stated that "employees are generally reinstated to the same or equivalent job..."; nor did Quest promise that it would accomodate Passauer's work limitations after he returned from leave. Rather, the letter indicated only that the company would attempt to accomodate him or would consider other options, such as requiring plaintiff to take additional leave or another position, which Quest did in fact do.

    Furthermore, Passauer has not demonstrated that he took action in reliance on the statements in the January 17, 2000 letter. Although he claims that he based his decision to take a leave of absence on the representations in the letter, he did not actually receive the letter until January 19, 2000, a day after he had already undergone surgery and decided to take the necessary leave. He further admitted in his deposition that he would have taken leave regardless of whether Quest had given him FMLA leave.

Dep. 100:13-19.

Passauer contends that Quest failed to notify him of a material fact- that his job was in jeopardy since the company was unable to accomodate his work restriction.  Plaintiff admits, however, that he knew he had to return to work within twelve weeks to have a guarantee of his job. Dep. 48:8-11. Quest did not fail to disclose material information about the possibility of the loss of job restoration rights- such information was explicitly disclosed in the January 17, 2000 letter, which stated: "If you do not return to work following FMLA leave...there is no guarantee of job restoration."

Passauer claims that he believed his return to work was accepted by Quest when he presented his fitness-for-duty certification on April 5, 2000, and that the phone message Martin left him that day was merely a request for him to stay on leave at the behest of the company.  However, Martin's message made it clear that Quest rejected Passauer's attempt to return to work, stating: "Until you can come back at full duty and be able to work with no restrictions, we cannot have you return to work." Nothing in this communication could reasonably be construed as falsely or misleadingly suggesting that Passauer's return to work had been accepted.  Passauer made no effort to return Martin's call or request further clarification of her message, nor did he attempt to get his work restriction lifted in the few days he had remaining before the expiration of his FMLA leave.  Passauer has failed to proffer evidence of any false statements negligently made by Quest upon which he relied to his detriment. At most, plaintiff's injury arose from his own misunderstanding.

C.

Passauer further brings a claim for promissory estoppel based upon the representations made by Quest in the January 17, 2000 letter.   Passauer fails to provide sufficient evidence to establish the

elements of a promissory estoppel claim. Under Maryland law, a plaintiff alleging promissory estoppel must prove:

> 1. a clear and definite promise;
> 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
> 3. which does induce actual and reasonable action or forbearance by the promisee; and
> 4. causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 166, 674 A.2d 521, 532 (1996).

Passauer fails to establish the threshold requirement of promissory estoppel- that Quest made a clear and definite promise. He argues that the letter dated January 17, 2000 contained a clear and definite promise that if plaintiff "return[ed] to work" after his FMLA leave, he would be "reinstated" as a Quest employee. The letter did not promise reinstatement, however; it simply stated that "employees *generally* are reinstated to the same or equivalent job" (emphasis added). In fact, the letter informed Passauer that if his fitness-for duty certificate placed any restrictions on his ability to perform the essential functions of his job, the company would "work with [him] in an effort to accomodate [him]." There was no clear and definite promise of reinstatement or accomodation, but simply a statement by Quest that it would *attempt* to accomodate Passauer and, if no accomodation was possible, that it would consider other options, such as requiring him to take additional leave or another open position. Quest did exactly that- it required Passauer to take additional leave, and Martin later suggested that he apply for another position as supervisor of logistics.[5] Despite Passauer's unfortunate misunderstanding, Quest did not promise that he would be reinstated following this additional leave, which exceeded the

---

[5]Although Martin was mistaken as to the availability of this position, there is no indication that her suggestion to apply for it was made in bad faith or with knowledge of its futility.

maximum allowable FMLA leave. In fact, Passauer admits that he realized there would be no guarantee of his job if he did not return to work within twelve weeks.

Passauer also fails to show that he relied on Quest's statements to his detriment. Plaintiff claims that he relied on the letter in deciding to take leave, and that he would have made other arrangements for leave if he had known that Quest would not "meet their end of the bargain" as set forth in the January 17, 2000 letter. As explained above, however, plaintiff received the letter after he had already undergone surgery and begun his leave. He made his decision to take leave without regard to Quest's designation of the absence as FMLA leave.

D.

Passauer further alleges that Quest is liable for breach of contract. Although plaintiff acknowledges that employment at will may be terminated without cause at any time by either party, he argues that the January 17, 2000 letter falls into a narrow exception to this rule recognized by the Maryland courts. Provisions in a personnel policy that "limit the employer's discretion to terminate an indefinite employment...may, if properly expressed and communicated to the employee, become contractual undertakings by the employer that are enforceable by the employee." *Staggs v. Blue Cross of Maryland, Inc.*, 61 Md.App. 381, 392, 486 A.2d 798, 803 (Md.App. 1985). Plaintiff argues that the January 17, 2000 letter was a binding contract in which Quest promised to reinstate plaintiff following his FMLA leave.

However, the *Staggs* court cautioned "that not every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant... 'general statements of policy are no more than that and do not meet the contractual requirements for an offer.'" *Id*. (citation omitted).

The January 17, 2000 letter was simply a statement of FMLA policy and did not circumscribe Quest's discretion to terminate an indefinite employment. Rather, Quest expressly reserved the right to terminate employment if plaintiff did not return to work on or before the expiration of FMLA leave. Def.'s Mot. for Sum. Judgment, Ex. A, 1, ¶10.

As explained above, Quest made no promise to reinstate Passauer following his FMLA leave but simply stated that it would attempt to accomodate him or consider other options. In its April 19, 2000 letter, Quest offered to discuss available positions with Passauer, and Martin later advised him to apply for the position of supervisor of logistics. Nowhere did the company promise to reinstate Passauer or give him another job if he exceeded the maximum FMLA leave. To the contrary, the January 17, 2000 letter made it clear that Passauer would have no job restoration rights beyond the expiration of his FMLA leave. Passauer fails to present evidence that Quest acted in bad faith in not accomodating him or treated him unfairly and inconsistently with regard to the company's policies.[6]

E.

Passauer alleges that Quest's failure to disclose material information amounted to fraud. To state a claim of fraud, Maryland law requires a plaintiff to allege that: "(1) the representation made by defendant was false, (2) that its falsity was known by the defendant, (3) that the representation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation, and (5) that plaintiff suffered damages directly resulting from the defendant's misrepresentation." *Roginsky*

---

[6]Passauer is unable to point to any factual basis for the allegation that he was terminated in bad faith so that Quest would not have to pay him severance. Dep. 97:4-98:6. When asked about the basis for this allegation, Passauer simply responded, "That's my reasoning...That's my thought." Dep. 97:20, 22.

*v. Blake*, 131 F.Supp.2d 715, 720 (D.Md. 2000) (citing *James v. Weisheit,* 279 Md. 41, 44, 367 A.2d 482 (1977)). Each of these elements must be proven by clear and convincing evidence. *Adler v. American Standard Corp.*, 538 F.Supp. 572, 581 (D.Md. 1982); *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188, 193 (1998).

Plaintiff cannot establish a claim of fraud for the same reasons he cannot establish a claim of negligent misrepresentation- he has not shown that any of Quest's statements were false, that Quest knew they were false, or that he relied upon such statements to his detriment. Plaintiff bases his fraud claim on the phone message left by Martin. He alleges that defendant lied by stating that it could not accomodate his lifting restriction and that defendant intentionally failed to disclose that plaintiff's job had been terminated "in order to put him 'outside the box' of FMLA, and give them reason to terminate his employment, without paying him severance." Pl.'s Response to Mot. for Sum. Judgment, at 11. However, Passauer has proffered no evidence that Quest could have accomodated his restriction, nor that there were jobs at the warehouse that did not require the ability to lift over thirty pounds. Furthermore, Martin was under no obligation to advise Passauer that his job was in jeopardy. Passauer was already aware of the fact that he would lose job restoration rights if he did not return to work at the end of his twelve-week leave, and at the time Martin left the phone message rejecting Passauer's return to work, Passauer still had five more days of FMLA leave. His job had not yet been terminated at that point.

Moreover, Passauer has not shown that any of Quest's representations regarding his FMLA leave were made for the purpose of defrauding him. "Proving fraudulent intent is necessary to prove a prima facie case of fraud in Maryland." *Sagent Technology, Inc. v. Micros Systems, Inc.*, 276

-12-

F.Supp.2d 464, 471 (D.Md. 2003). As discussed above, Passauer's conclusory allegations fail to show bad faith, evil motive, or malice on Quest's part.

Furthermore, fraud is not a proper claim where the plaintiff is alleging the breach of a promise rather than a misrepresentation of material fact. *See Ward Development Co., Inc. v. Ingrao*, 63 Md.App. 645, 493 A.2d 421, 426 (1985). "Ordinarily fraud cannot be predicated on statements which are promissory in their nature, and therefore an action for deceit will not lie for the unfulfillment of promises or the failure of future events to materialize as predicted. Failure to fill a promise is merely a breach of contract, which must be enforced, if at all, by an action *ex contractu*." *Hale Trucks of Maryland, LLC v. Volvo Trucks North America*, Inc., 224 F.Supp.2d 1010, 1032 (D.Md. 2002) (quoting *Alleco Inc. v. Harry and Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 196, 665 A.2d 1038, 1048 (1995) (citation omitted)). Thus, Passauer cannot make out a claim of fraud based on allegations that Quest breached the promises it made in its January 17, 2000 letter.

### F.

Finally, Passauer has requested leave to amend the complaint to add a claim for wrongful discharge. Under Fed.R.Civ.P. 15(a), a party may amend his complaint by leave of the court and leave shall be freely granted when justice so requires. "[I]t is well settled that, 'in the absence of any apparent or declared reason- such as undue delay, bad faith, or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.- the leave sought should, as the rules require, be freely given.'" *HealthSouth Rehabilitation Hosp. v. American Nat. Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

In the instant case, plaintiff has requested leave to amend the complaint over six months after the scheduled deadline for filing amendments to the pleadings. While delay alone is generally not a sufficient reason to deny the requested amendment, it may be sufficient when accompanied by futility or prejudice to the non-moving party. *Id*. Passauer's proposed additional claim of wrongful discharge would be futile.

The tort of wrongful discharge is a narrow exception to the general rule that an employee at-will may be terminated for any reason. *Szaller v. American Nat. Red Cross*, 293 F.3d 148, 150 (4th Cir. 2002). Maryland law recognizes a cause of action for wrongful discharge when the motivation for discharge of an at-will employee violates a clear mandate of public policy. *Adler v. American Standard Corp.*, 291 Md. 31, 47, 432 A.2d 464, 473 (1981). Maryland courts have emphasized that in order for a mandate of public policy to serve as the basis of a wrongful discharge action, there "must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation." *Szaller*, 293 F.3d at 151 (quoting *Porterfield v. Mascari II, Inc.,* 142 Md.App. 134, 788 A.2d 242, 245 (2002)). Furthermore, "a complaint must plead with particularity the source of the public policy and the alleged violation." *Porterfield*, 142 Md.App. at 140, 788 A.2d at 245.

Passauer bases his proposed wrongful discharge claim on "state and federal law and public policy, including but not limited to the Family Medical Leave Act." The general invocation of "state and federal law and public policy" is too vague to support a claim for wrongful discharge. Thus, the only source of public policy pled with sufficient particularity is the FMLA.

Under Maryland law, however, "[a]busive discharge is inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 605, 561 A.2d 179, 180 (1989). Thus, "[w]here the public policy foundation for the wrongful discharge is expressed in a statute, and that statute already contains a remedy for vindicating the public policy objectives, then judicial recognition of a wrongful discharge is considered both redundant and inappropriate." *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 774 (4th Cir. 1998). The FMLA provides a civil remedy for violation of its mandates, which Passauer himself has invoked. Because remedial action is available under the statute, plaintiff may not properly bring a claim for wrongful discharge based on a violation of the policies contained in the statute.

For the foregoing reasons, Defendant Quest's motion for summary judgment will be granted.[7]

---

[7]Because summary judgment is granted, the court will deny plaintiff's motion to compel discovery as moot. The motion would have been denied, however, regardless of the summary judgment disposition. Plaintiff filed the motion to compel answers to written interrogatories served almost one month after the scheduled discovery deadline. Passauer argues that discovery was extended by an order of this court which granted an agreed motion to modify the scheduling order. The order did not extend or reopen general discovery, however. It expressly extended the deadline for the limited purpose of defendant taking the deposition of plaintiff. It further extended three other specific deadlines: the deadline for submitting a status report, for requests for admissions, and for dispositive pretrial motions. Moreover, plaintiff has not filed an affidavit pursuant to Rule 56(f), showing that specific information was needed to respond to the motion for summary judgment. "A party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Nguyen v. CNA Corp.,* 44 F.3d 234, 242 (4th Cir. 1995)).

A separate order is being entered herewith.

| | |
|---|---|
| <u>  April 22, 2004  </u><br>Date | <u>  /s/  </u><br>Catherine C. Blake<br>United States District Judge |